IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **POTTER INSURANCE AGENCY, INC.** and **PATRICK A. POTTER,** )<br>)<br>)<br>              Plaintiffs,   )<br>)<br>   v.   )<br>)<br>**NATIONWIDE MUTUAL INSURANCE COMPANY**,   )<br>)<br>)<br>Serve:   )<br>Nationwide Mutual Insurance Company   )<br>Corporation Service Company, Registered Agent   )<br>100 Shockoe Slip, 2nd Floor   )<br>Richmond, VA 23219   )<br>)<br>              Defendant.   )<br>_____ ) | Case No. _____ |

**COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Potter Insurance Agency, Inc. and Patrick A. Potter (collectively, "Potter Agency" or "Mr. Potter"), for their action against Nationwide Mutual Insurance Company ("Nationwide"), allege as follows:

**I.   THE NATURE OF THIS ACTION**

1. The defendant, Nationwide, operates a property and casualty insurance business throughout the United States using a network of independently contracted insurance agents who agree to place their clients exclusively with Nationwide over the course of an entire career.

2. In exchange for that long-term exclusive commitment, Nationwide's contracts include a unique retirement-type severance package, which increases over the life of the contract – as the agent's business grows – and is payable upon retirement or other final cancellation of the contract.

1

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*

3. On or about December 31, 2016, Nationwide began to implement a scheme designed to confiscate substantial portions of the post-termination retirement packages to which the agents are contractually entitled. On that date, Nationwide eliminated a major component of the retirement package.

4. On April 16, 2018, continuing with the scheme, Nationwide announced a plan to terminate all of its exclusive agent contracts by July 1, 2020, via a set of complex arrangements designed to confiscate further portions of the agents' retirement packages and generate a massive wealth transfer from the agents to Nationwide.

5. The Plaintiff, Mr. Potter, is one of the exclusive agents whose retirement package is being confiscated, injured, and threatened by Nationwide's actions.

6. This Complaint for declaratory and injunctive relief, focusing on three actions taken by Nationwide in furtherance of its scheme, requests: (i) a declaration that each of those three actions constitutes a breach of Mr. Potter's governing contract, including its implied covenant of good faith and fair dealing, (ii) injunctive relief with respect to two of those actions, and (iii) expedited treatment with respect to the legal issues, which are pure contract interpretation questions.

## II.   JURISDICTION AND VENUE

7. The Defendant Nationwide Mutual Insurance Company is a diversified insurance and financial services company incorporated under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio.

8. Plaintiff Potter Insurance Agency, Inc. is organized under the laws of Virginia, with its place of business at 619 E. Fifth Street, Big Stone Gap, Virginia 24219.

9. Plaintiff Patrick A. Potter, a resident of Tennessee, has his office and place of business at 619 E. Fifth Street, Big Stone Gap, Virginia 24219.

2

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.,* et al. *v. Nationwide Mutual Insurance Company*

10. Complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has original jurisdiction of the case under 28 U.S.C. § 1332(a).

11. Venue is proper in the Big Stone Gap Division of the Western District of Virginia. The business in question is located in this Division and the events giving rise to this action are having their impact in this Division.

12. Acting within its jurisdiction, this Court may award the declaratory and injunctive relief requested in this action pursuant to 28 U.S.C. § 2201, *et seq*.

### III. THE PARTIES

13. Nationwide Mutual Insurance Company is a large diversified insurance and financial services organization with many subsidiaries and affiliates, conducting business throughout the United States.

14. The Potter Agency has been a Nationwide exclusive agent since March 1, 1994, operating under the Corporate Agency Agreement attached as Exhibit A. Mr. Potter, 57 years of age, is the President of the Potter Agency.

15. The agency has been a family business selling Nationwide Insurance policies for more than 58 years. Mr. Potter's father, a World War II and Korean War veteran, opened the agency representing Nationwide in 1960. In 1984, after serving four years in the United States Air Force, Mr. Potter went to work for his father's business. When his father retired in 1992, Mr. Potter was charged with continuing the business as the Potter Agency.

### IV. NATIONWIDE'S EXCLUSIVE AGENT SYSTEM

16. The traditional model for insurance agencies is the "independent" model, where the insurance agency has available and represents a number of insurance companies or "carriers" and

3

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*

selects from its stable of insurers the companies and products that best meet the needs of the agency's clients.

17. Over the past 50 years, some insurance companies have developed "exclusive" agent contracts, where the insurance agency is required to place its clients with one particular insurance company for the entire duration of the contract. (Agents who enter into these contracts are sometimes referred to as "career" agents.) In exchange for long-term exclusivity, these companies provide various types of "retirement-" like benefits at the conclusion of the contracts.

18. Apart from this exchange of a long-term exclusive commitment for retirement-type benefits in the exclusive agent systems, there is no material difference between the operation of an "independent" agency versus an "exclusive" agency. Both are autonomous independent contractors, developing clients and placing them with insurance companies, generating insurance premiums for the insurance companies in exchange for commissions paid by the companies. Nationwide, for example, operates both an exclusive agent system and an independent agent system.

19. For most of Nationwide's exclusive agents, including Mr. Potter, the retirement package that Nationwide provides in exchange for the agent's long-term exclusive commitment, titled the Agency Security Compensation ("ASC") Plan, consists of two components, called Deferred Compensation Incentive Credits ("DCIC") and Extended Earnings.

20. The DCIC component of the ASC plan is the contractual equivalent of a deferred compensation retirement plan, rewarding longevity with a cumulative account that builds annually but is not available until retirement or termination and, even then, not payable unless the agent has reached certain age and tenure thresholds. The Extended Earnings component is an amount equal to the renewal commissions paid to the agent during the twelve calendar months preceding the

4

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.,* et al. *v. Nationwide Mutual Insurance Company*

termination of the contract, recognizing the volume of recurring premiums generated by the agent in the final year of the relationship.

21. Nationwide characterizes its ASC Plan as a unique incentive for committing to a long-term exclusive relationship with Nationwide:

> DCIC and Extended Earnings make up the Agency Security Compensation Plan (ASCP) which is part of your career agent agreement. No other deferred compensation plan in the industry compares to the significant benefit provided by ASCP. While other companies have plans like Extended Earnings, DCIC is very unique and provides substantial deferred income. Many agents have DCIC balances in excess of $1 million and these are continuing to grow.

(Memorandum from Nationwide's Office of Nationwide Agencies to Nationwide Agents, 06/14/1999, attached as Exhibit B.)

22. Because Nationwide exclusive agents are independent contractors, the ASC Plan could not have been set up as a funded, qualified plan under the Internal Revenue Code, as Nationwide also explains in Exhibit B. Nationwide nevertheless assures the agents that it assiduously maintains the ability to satisfy its financial obligations under the ASC Plan:

> Although the Plan is not funded, Nationwide does recognize this obligation as a liability on the Companies' financial statements and accumulates funds to pay these benefits. The ASCP is evaluated annually with the same actuarial scrutiny as other financial obligations.

(*Id.*)

23. From time to time, Nationwide assures its exclusive agents that it does not intend to discontinue either component of the ASC plan, *e.g.*, in Exhibit B:

> The purpose of this memo is to assure you that we have no plans to eliminate DCIC or Extended Earnings. We are committed to continuing these valuable benefits.

(*Id.*)

5

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.,* et al. *v. Nationwide Mutual Insurance Company*

## V.   RELEVANT PROVISIONS OF MR. POTTER'S EXCLUSIVE AGENT CONTRACT

24. Exhibit A, the governing Corporate Agency Agreement, designates the Potter Insurance Agency, Inc. as an independent contractor for all purposes (¶ 1), mandates that the Potter Agency will "represent Nationwide exclusively in the sale and service of insurance" (¶ 4), and states the Agreement may not be "changed, altered, or modified" except by a "writing signed by [the Potter] Agency and an officer of Nationwide" (¶ 17).

25. The ASC plan is set forth in detail in ¶¶ 12(a) through 12(h) of the Agreement, under the heading "Agency Security Compensation." The computation provisions are set out in ¶¶ 12(a) (DCIC) and 12(b) (Extended Earnings). The payment provisions are set out in ¶¶ 12(c) - 12(e).

26. Paragraph 12(f), titled "Cessation of Agency Security Compensation," is, essentially, a forfeiture for competition provision stating that post-termination competition by the Potter Agency will result in loss of the entire ASC package.

27. Paragraph 12(h), titled "Amendments and Termination," states Nationwide's intent to continue the ASC Plan indefinitely, but reserves the right to amend or terminate the plan "to protect the Agency and Nationwide against unforeseen conditions":

> Nationwide hopes and expects to continue the Agency Security Compensation Plan indefinitely, and every effort has been made to meet future conditions. In order to protect the Agency and Nationwide against unforeseen conditions, however, the right to amend or terminate this plan is necessarily reserved by Nationwide. Nationwide may terminate this plan by notification, at least sixty (60) days prior to such termination, in writing. No change in the Plan or termination, however, can alter or modify rights or benefits received or credited prior to such change or modification.

28. In December of 2013 Nationwide circulated a proposed modification of the agent agreements of all exclusive agents entitled to receive DCIC benefits, including Mr. Potter. Titled "Agent Compensation Choice Addendum," the document offered an opportunity to give up the right

to continue to earn and receive DCIC in return for a more favorable compensation schedule. Essentially, the proposal asked the agents to elect between these two options:

- ☐ "remain eligible to earn Deferred Compensation Incentive Credits ("DCIC") until Agent turns age 65 pursuant to the IC Agreement"

or

- ☐ obtain a more favorable compensation schedule in return for "giv[ing] up the right to earn and receive DCIC for any insurance product sold by Nationwide, as of January 1, 2014"

Mr. Potter's copy, which had an effective date of April 1, 2014, is attached as Exhibit C, showing Mr. Potter selected the first option, electing to "remain eligible to earn [DCIC]" until age 65.

29. The proposed addendum also contained a reiteration of Nationwide's "unforeseen conditions" reservation in Paragraph 12(h) of Mr. Potter's Agreement, stating that:

> Agent acknowledges that nothing contained in this Compensation Choice Addendum prevents or precludes Nationwide from unilaterally modifying or making changes to . . . the Agent Security Compensation provisions of Agent's IC Agreement . . . if, in its sole discretion, Nationwide determines that such changes are necessary to address changing business and/or market conditions.

## VI. THE EVENTS GIVING RISE TO THIS ACTION

### A. Elimination of the DCIC Component of the ASC Plan

30. In 2016, Nationwide issued a "unilateral amendment" to all exclusive agents, including Mr. Potter, who had elected in 2014 to retain their DCIC benefits until age 65 via the "Agent Compensation Choice Addendum." Nationwide's unilateral amendment (attached here as Exhibit D) states that DCIC will be discontinued as of December 31, 2016: "In no event shall Agent or Agency accrue any DCIC after December 31, 2016."

31. Nationwide does not state any reason for unilaterally discontinuing DCIC benefits and refuses to respond to inquiries asking what "unforeseen conditions" or "changing business

7

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.,* et al. *v. Nationwide Mutual Insurance Company*

and/or market conditions" might have arisen since 2014, when Nationwide and agents like Mr. Potter confirmed their intention to continue DCIC to age 65 via the "Agent Compensation Choice Addendum." Nationwide simply maintains that it acted pursuant to applicable paragraphs in the exclusive agent contracts (¶ 12(h) in Mr. Potter's Agreement), "conferring authority upon [Nationwide] to unilaterally amend certain provisions" of the Agreements. (Exhibit D.)

**B.     Elimination of the Extended Earnings Component of the ASC Plan**

32.     On April 16, 2018, Nationwide announced a unilateral at-will termination of all of its exclusive agent contracts, including Mr. Potter's, effective July 1, 2020. Specifically, Nationwide states in that communication to Mr. Potter and all other exclusive agents that "after July 1, 2020, Nationwide will no longer have exclusive agent contracts."

33.     In the April 16, 2018, termination announcement, Nationwide also states that it will interrupt the normal functioning of the contract by eliminating the Extended Earnings component of the ASC Plan during the year preceding the July 1, 2020 termination:

> Separately, Nationwide has made the decision to eliminate all non-DCIC deferred compensation, which will be phased out from Aug. 1, 2019, through June 30, 2020. This includes *extended earnings*, agency cancellation and contingent cancellation payments. Although nothing is occurring until 2019, *we want to give you time to think about your options*. You will begin to receive details on this change in the next few days. (Emphasis added.)

34.     Further "details" emerged in another announcement three days later, on April 19, 2018:

> As Mark Berven and I announced earlier this week, Nationwide has made the decision to eliminate all non-DCIC deferred compensation, which will be phased out from Aug. 1, 2019, through June 30, 2020. This includes *extended earnings*, agency cancellation, and contingent cancellation payments ("Non-DCIC Deferred Compensation").

* * *

8

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.*, et al. *v. Nationwide Mutual Insurance Company*

> Nationwide has amended your P&C exclusive agent contracts, effective Apr. 16, 2018, to reflect this change. (Emphasis added.)

The "unilateral amendment" Nationwide is using to phase out the Extended Earnings component of the ASC Plan is attached as Exhibit E. This is the same technique Nationwide used to discontinue the DCIC component as of December 31, 2016, referring to applicable paragraphs (Paragraph 12(h) in Mr. Potter's Agreement) "conferring authority upon the companies to unilaterally amend certain provisions" of the Agreements. (Exhibit E, third paragraph.)

35. Driving home the significance of this elimination of the Extended Earnings benefit in the year preceding the July 1, 2020, termination, Nationwide repeatedly emphasizes in the April 19, 2018 announcement (¶ 34, *supra*) that

- As a result, you will not receive any [extended earnings] should your P&C exclusive agent contract be cancelled on or after July 1, 2020 . . .

  \* \* \*

- Please note the above applies to extended earnings contract provisions.

  \* \* \*

- Again, you will receive no [extended earnings] should your P&C exclusive agent contract be canceled on or after July 1, 2020.

36. Having sufficiently intimidated the agents with the prospect of a unilateral at-will termination on July 1, 2020 with no Extended Earnings, Nationwide then turns to "options" that it is offering the agents as a way to escape that dire consequence. These "options," which are discussed in more detail in ¶¶ 37 - 40, *infra*, are designed as a massive wealth transfer from the exclusive agents to Nationwide. Essentially, Nationwide is using the threat of a unilateral at-will termination with no Extended Earnings to coerce exclusive agents like Mr. Potter into agreements which require them to "buy" their books of business from Nationwide in order to continue with their clients after the exclusive contracts are terminated.

    **C.    Requiring Agents To "Buy" Their Own Books Of Business**

37.    Black's Law Dictionary, p. 218 (10th Ed.) defines "book of business" as follows:

> **book of business.** (1959) **1.** A salesperson's list of accounts or clients. • Traditionally, the phrase is used in reference to financial advisers, *insurance agents*, private bankers, investment bankers, and financial planners. **2.** By extension, an experienced lawyer's roster of stable clients who are loyal enough to the lawyer to continue sending legal work to that lawyer regardless of which firm the lawyer might become affiliated with. (Emphasis added.)

38.    Mr. Potter is a self-employed salesperson – an independent contractor insurance agent, with a Book of Business that is the essential tool of his trade. Mr. Potter's Book of Business consists of a roster of his clients and prospects (including clients currently placed with Nationwide, clients currently placed with other insurers under contractually-permitted brokerage and outplacement arrangements, clients formerly placed with Nationwide and other insurers, and prospects who have not been placed with any insurer), along with addresses, contact points, personal information including gender and marital status, current business relationship (client, former client, prospect, etc.), and pertinent information concerning their insurance needs.

### Charging Mr. Potter For His Book Of Business

39.    To the extent Nationwide may succeed in forcing agents like Mr. Potter into alternative "options" by eliminating the Extended Earnings component of the ASC Plan in the final year of the contract (see ¶¶ 32 - 36, *supra*), Nationwide will use those options to obtain a massive wealth transfer from the agents to itself by charging them for their own Books of Business. In its April 19, 2018 communication, for example, Nationwide states:

> After becoming an independent agent through the ACE [Agent Contract Exchange] Options, you will own the book of business and have the opportunity to continue to grow these policy assets.

10

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.*, et al. *v. Nationwide Mutual Insurance Company*

40. Essentially, the Agent Contract Exchange ("ACE") options require the agents to "buy" their Books of Business, either through (a) an outright purchase (with a three-year restriction on resale to another, followed by a two-year period in which Nationwide has a repurchase right) at an arbitrary price dictated by Nationwide, or (b) through a hypothetical asset transfer accompanied by an IRS Form 1099 (with Nationwide retaining effective control over the business for years) at an arbitrary valuation dictated by Nationwide.

## VII. CAUSES OF ACTION

### COUNT 1

### Elimination Of The DCIC Component Of The ASC Plan

41. The preceding Paragraphs 1 - 40 are hereby incorporated by reference.

42. Mr. Potter's Corporate Agency Agreement specifies generally that the Agreement "may be changed, altered, or modified only in writing signed by [Mr. Potter] and an officer of Nationwide." (Corporate Agency Agreement, Exhibit A, ¶ 17.)

43. Nationwide separately reserves the right to amend the ASC Plan, but only where necessary "to protect [Mr. Potter] and Nationwide against unforeseen conditions." (*Id.*, ¶ 12(h).)

44. In 2014, Nationwide and Mr. Potter, under the Agent Compensation Choice Addendum to his Corporate Agency Agreement, agreed that Mr. Potter would remain eligible to earn DCIC until age 65 (waiving an opportunity to obtain a more favorable compensation schedule in exchange for discontinuing his DCIC). (Exhibit C, p. 1.)

45. The Addendum also reaffirmed the "unforeseen conditions" reservation in the Corporate Agency Agreement, stating that Nationwide could unilaterally modify the ASC Plan if "such changes are necessary to address changing business and/or market conditions." (*Id.*, p. 2.)

11

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*

46. Effective December 31, 2016, Nationwide unilaterally amended the ASC Plan to eliminate DCIC prospectively, stating ¶ 12(h) of the Corporate Agency Agreement "conferr[ed] authority" upon Nationwide "to unilaterally amend" the ASC Plan.

47. Nationwide does not state any reason for unilaterally discontinuing DCIC and refuses to respond to inquiries seeking to discover what "unforeseen conditions" or "changing business or market conditions" might have arisen since 2014 to necessitate the discontinuance of DCIC.

48. On information and belief, there have been no "unforeseen conditions" or "changing business and/or market conditions" which would have necessitated the discontinuance of DCIC.

49. In light of Nationwide's statement that it "accumulates funds to pay these benefits" and evaluates the ASC plan "with the same actuarial scrutiny as other financial obligations" (Memorandum from Nationwide's Office of Nationwide Agencies to Nationwide Agents, Exhibit B), inability to make the payments would not be a legitimate bonafide reason for discontinuing DCIC.

50. In the absence of "unforeseen conditions" or "changing business and/or marketing conditions" necessitating cessation of these valuable compensation incentives, Nationwide's discontinuance of DCIC as of December 31, 2016 by "unilateral amendment" is a breach of the express provisions of Mr. Potter's Corporate Agency Agreement with its 2014 Agent Compensation Choice Addendum.

### *The Covenant Of Good Faith And Fair Dealing*

51. Alternatively, even assuming, *arguendo*, that Nationwide's unilateral amendment qualifies as an exercise of discretionary power reserved by Nationwide, that exercise of discretion would be in breach of the implied covenant of good faith and fair dealing, which requires

12

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.,* et al. *v. Nationwide Mutual Insurance Company*

faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.

52. Mr. Potter certainly had a justified expectation that Nationwide would not discontinue this unique contractual inducement for making a long-term exclusive commitment to Nationwide, purely as an exercise in corporate greed, particularly when Nationwide and Mr. Potter had just confirmed in 2014 that Mr. Potter would remain eligible to earn DCIC until age 65.

WHEREFORE, the Potter Agency and Mr. Potter request

(i)  a judgment declaring that Nationwide's unilateral amendment discontinuing DCIC as of December 31, 2016 breaches the express provisions of the Corporate Agency Agreement, with its 2014 Agent Compensation Choice Addendum, and the implied covenant of good faith and fair dealing in the Agreement, and

(ii)  an injunction directing Nationwide to restore Mr. Potter's DCIC beginning January 1, 2017.

## COUNT 2

**Elimination Of The Extended Earnings Component Of The ASC Plan**

53. The preceding Paragraphs 1 - 52 are hereby incorporated by reference.

54. Mr. Potter's Corporate Agency Agreement specifies that the Agreement "may be changed, altered, or modified only in writing signed by [Mr. Potter] and an officer of Nationwide." (Corporate Agency Agreement, Exhibit A, ¶ 17.)

55. Nationwide separately reserves the right to amend the ASC Plan, but only where necessary "to protect [Mr. Potter] and Nationwide against unforeseen conditions." (*Id*., ¶ 12(h).)

13

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*

56. On April 16, 2018, Nationwide announced a unilateral, at-will termination of all its exclusive agent contracts, including Mr. Potter's, effective July 1, 2020, and simultaneously announced that it would phase out the Extended Earnings component of the ASC Plan during the year preceding the termination, using another "unilateral amendment."

57. This time, Nationwide's motive is particularly transparent. In the April 16 and April 19, 2018 announcements, Nationwide drives home repeatedly the message that any agent who wishes to simply perform the contract until the announced termination date will end up with ***no Extended Earnings***. With that intimidating message established, Nationwide offers its corrupt "options" – all of which are predicated on the assumption that Mr. Potter must "buy" his own Book of Business from Nationwide – as an escape.

58. Like the DCIC situation, there is no pretense that Nationwide has encountered "unforeseen conditions" that necessitate eliminating Extended Earnings "to protect [Mr. Potter] and Nationwide" or that eliminating Extended Earnings is "necessary to address changing business and/or market conditions." This is pure extortion to accomplish a wealth transfer from the agents to Nationwide via the "options" – in other words, another exercise of corporate greed.

### *The Covenant Of Good Faith And Fair Dealing*

59. Alternatively, even assuming, *arguendo*, that Nationwide's unilateral amendment qualifies as an exercise of discretionary power reserved by Nationwide, that exercise of discretion would be in breach of the implied covenant of good faith and fair dealing, which requires faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.

14

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**
*Potter Ins. Agency, Inc.,* et al. *v. Nationwide Mutual Insurance Company*

60. Mr. Potter certainly had a justified expectation that Nationwide would not discontinue his Extended Earnings in the final year of his contract in order to pressure him into an agreement to buy his own Book of Business from Nationwide.

WHEREFORE, the Potter Agency and Mr. Potter request

(i) a judgment declaring that Nationwide's unilateral amendment phasing out Extended Earnings during the year preceding the announced July 1, 2020 termination is an anticipatory repudiation of the express provisions of the Corporate Agency Agreement and the implied covenant of good faith and fair dealing in that Agreement, and

(ii) an injunction prohibiting Nationwide from eliminating Extended Earnings prior to the announced July 1, 2020 termination.

## COUNT 3

### Charging For The Book Of Business

61. The preceding Paragraphs 1 - 60 are hereby incorporated by reference.

62. Nationwide has no contractual basis for a claim that it owns Mr. Potter's Book of Business. It cannot, therefore, make him buy it when the Corporate Agency Agreement is cancelled. It has invented this idea in order to take a large sum from Mr. Potter, after forcing him into its set of "options" by announcing the elimination of his Extended Earnings in the final year before the termination of his contract on July 1, 2020.

63. The governing Corporate Agency Agreement (Exhibit A) emphasizes that the Potter Agency is an independent contractor for all purposes (¶ 1), responsible for all expenses in connection with the operation of the agency (¶ 2), including all expenses associated with the development of the client base that forms the Book of Business of the agency, the essential tool of the trade of an independent contractor insurance agency.

15

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.*, et al. *v. Nationwide Mutual Insurance Company*

64. The Corporate Agency Agreement states that "it will be necessary for Nationwide to provide the Agency with certain manuals, forms, records, and such other materials and supplies as are necessary in the conduct of an insurance business" which are "company property" and must be returned to Nationwide upon cancellation of the Agreement (¶ 1). These manuals, forms, records, etc. to be provided by Nationwide do not constitute any portion of Mr. Potter's Book of Business. Nationwide has no idea who any of Mr. Potter's clients are unless and until Mr. Potter submits insurance applications to Nationwide on their behalf.

65. The Corporate Agency Agreement implicitly confirms that Mr. Potter owns and has the right to use his Book of Business. (See ¶¶ 63 - 64, *supra*.)

WHEREFORE, the Potter Agency and Mr. Potter request a final judgment declaring that Nationwide does not own Mr. Potter's Book of Business.

## SUMMARY OF THE PRAYER FOR RELIEF

The Potter Agency and Mr. Potter request the following declaratory, injunctive, and other relief:

(a) a judgment declaring that Nationwide's unilateral amendment discontinuing DCIC as of December 31, 2016 breaches the express provisions of the Corporate Agency Agreement and the implied covenant of good faith and fair dealing in that agreement, and an injunction directing Nationwide to restore Mr. Potter's DCIC beginning January 1, 2017;

(b) a judgment declaring that Nationwide's announced unilateral amendment phasing out Extended Earnings during the year preceding the announced July 1, 2020 termination is an anticipatory breach of the express provisions of the Corporate Agency Agreement and the implied covenant of good faith and fair dealing in that

16

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.,* et al. *v. Nationwide Mutual Insurance Company*

        Agreement, and an injunction prohibiting Nationwide from eliminating Extended Earnings prior to the announced July 1, 2020, termination;

(c)    a judgment declaring that Nationwide does not own Mr. Potter's Book of Business;

(d)    an award of all costs expended by the Potter Agency and Mr. Potter in connection with this civil action; and

(e)    such declaratory, equitable, and other relief as the Court finds appropriate.

### REQUEST FOR EXPEDITED TREATMENT

The Potter Agency and Mr. Potter request expedited treatment with respect to the legal issues identified in Counts 1 - 3 above, which are pure contract interpretation questions. The Potter Agency and Mr. Potter are being deprived of their DCIC by a "unilateral amendment" of questionable legality, are now faced with the loss of their Extended Earnings via another questionable "unilateral amendment," and are simultaneously being pressured by Nationwide to "think about your options" to avoid that calamity. The "options" themselves are also of questionable legality, having been designed to extract a large amount of money and other concessions from the Potter Agency, using an empty assertion that Nationwide owns the Potter Agency's Book of Business.

The declaratory judgments requested in Counts 1 - 3 will serve a useful purpose by resolving existing and imminent controversies between the parties in a practical and efficient manner, expediting the ascertainment of rights, stabilizing legal relations between the parties, and dissipating uncertainty. Declaring the rights and obligations of parties involved in existing and imminent contractual disputes is a classic use of the Declaratory Judgment action, which is designed to expedite the ascertainment of rights and dispel the types of uncertainty that can accompany ambiguous contractual assertions.

DATED:    July 9, 2018

17

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF
*Potter Ins. Agency, Inc.*, et al. *v. Nationwide Mutual Insurance Company*

Respectfully submitted,

**GLENN, FELDMANN, DARBY & GOODLATTE**

*/s/ Robert A. Ziogas*

**ROBERT A. ZIOGAS** (VSB #24964)
**PAUL G. BEERS** (VSB #26725)
**EMMA MADDUX KOZLOWSKI** (VSB #85957)
37 Campbell Avenue, S.W.
Roanoke, VA 24011-2887
Tel:    540-224-8000
Fax:   540-224-8050
Email: rziogas@glennfeldmann.com;
          pbeers@glennfeldmann.com;
          ekozlowski@glennfeldmann.com

**WILLIAM P. TEDARDS, JR.**
DC Bar No. 143636
(*Pro Hac Vice* motion pending)
1101 30th Street, NW, Suite 500
Washington, DC 20007
Tel:    202-797-9135
Fax:   202-797-9139
Email: BT@tedards.net

Counsel for Plaintiffs Potter Insurance Agency, Inc. and Patrick A. Potter

18

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**
*Potter Ins. Agency, Inc.,* et al. *v. Nationwide Mutual Insurance Company*