**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **POTTER INSURANCE AGENCY, INC. and PATRICK A. POTTER,** | ) ) ) | Case No. 2:18-cv-00021-JPJ-PMS |
| Plaintiffs, | ) ) | **Judge James P. Jones** |
| v. | ) ) | **Magistrate Judge Pamela Meade Sargent** |
| **NATIONWIDE MUTUAL INSURANCE COMPANY**, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 1 of 47   Pageid#: 161

TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.  **NATIONWIDE'S MOTION SHOULD BE DENIED AS TO COUNTS 1 AND 2 BECAUSE THE AGENCY AGREEMENT LIMITS NATIONWIDE'S RESERVATION OF DISCRETIONARY POWER** . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.  Nationwide's Discretion Under The Express Provisions Of The Contract Is Limited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

   B.  Assuming, *Arguendo*, That Nationwide's Unilateral Amendment Qualifies As An Exercise Of Discretionary Power, Its Exercise Of Discretion Violates The Implied Covenant Of Good Faith And Fair Dealing . . . . . . . . . . . . . . . . . . . 9

II. **NATIONWIDE'S MOTION SHOULD BE DENIED AS TO COUNT 3 BECAUSE NATIONWIDE DOES NOT OWN MR. POTTER'S BOOK OF BUSINESS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   A.  Mr. Potter's Corporate Agency Agreement Does Not Address Mr. Potter's Book Of Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   B.  The Predominant Line Of Decisions Construing The Potter Contract Form Holds That Nationwide Does Not Own the Agent's Book Of Business. . . . . . . . 19

   C.  Subsequent Attempts By Nationwide To Develop A Separate Basis For Claiming Ownership Of Mr. Potter's Book of Business Are Unavailing Here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

      1.  The 2014 Proposed Addendum (Doc. 1-4). . . . . . . . . . . . . . . . . . . . . 26

      2.  The 2000 Systems Service And Support Agreement (Doc. 19-1) . . . . . . 29

         a.  Conflating Nationwide's Policies With Mr. Potter's Client Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

      3.  New Language Inserted Into Later Agency Agreements. . . . . . . . . . . . . 32

   D.  The *Kohler* and *Costanzo* Decisions Do Not Alter The Conclusions That Emerge From The Predominant Line Of Cases Construing The Potter Form Of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS

ii

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 2 of 47   Pageid#: 162

**III.     NATIONWIDE'S ARGUMENT THAT MR. POTTER IS NOT ENTITLED TO
         DECLARATORY AND INJUNCTIVE RELIEF IS WITHOUT MERIT** . . . . . . . . 40

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS

iii

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 3 of 47   Pageid#: 163

Plaintiffs Potter Insurance Agency, Inc. and Patrick A. Potter ("Potter Agency" or "Mr. Potter") submit this Memorandum in Opposition to Defendant Nationwide Mutual Insurance Company's Motion to Dismiss the Complaint.

**INTRODUCTION**

Fidelity to contractual agreements is a bedrock principle of American jurisprudence. By attempting to keep Mr. Potter from completing his Corporate Agency Agreement in a normal fashion, Nationwide is committing wholesale violations of that fundamental principle, obliterating its half of the essential bargain that the parties struck in 1994. And it is doing that solely to transfer substantial funds from Mr. Potter to itself prior to terminating his Agreement on July 1, 2020.

In order to accomplish this corrupt objective, Nationwide is breaching express provisions of the Agreement repeatedly, violating several black letter rules of contract interpretation, such as the imperatives that contracts are to be construed as a whole giving effect to every provision if possible, that all provisions should be harmonized if reasonably possible, and that objective communications of intent exchanged between the parties are to be given effect over subjective, "hidden" agendas.

Ignoring all of these basic contract interpretation principles, Nationwide asserts that it can do anything it wants because Mr. Potter agreed to allow Nationwide to "make business decisions adverse to [Mr. Potter's] interest." Nationwide's Memorandum in Support of its Motion to Dismiss at p. 1 (Doc. 19, Pageid#: 98), quoting the decision in *Nemier v. Nationwide Mutual Ins. Co.*, 458 Fed. App'x 420, 424 (6th Cir. 2012). But the *Nemier* decision provides no cover for the things Nationwide is trying to do here.

*Nemier* is essentially a fraud in the inducement case, alleging Nationwide misrepresented its own business plans for selling insurance policies when it induced Ms. Nemier to open a new agency.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
1
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 4 of 47   Pageid#: 164

The cited portion of the *Nemier* decision from which Nationwide has selected the two quotes that appear on pages 1 and 12 of its Memorandum addresses that issue -- the need for every insurance company in this highly regulated industry to retain control of the terms and conditions under which it issues insurance policies. *Nemier's* reasoning is *not directed to the agency relationship*. Here is the cited portion of the *Nemier* decision from which the quotes on pages 1 and 12 of Nationwide's Memorandum were selected, with the language deleted by Nationwide highlighted (bold):

> Nemier knew that Nationwide could make business decisions adverse to her interests, without warning, because she signed a contract authorizing Nationwide to do precisely that. *See* R. 53, Attach. 4 ("It is understood and agreed that . . . each Company retains the right to change, alter or amend terms under which it will insure risks, **and [can] change, alter or amend such rules, regulations, prices, and terms, including the right to limit, restrict, or discontinue entirely the acceptance of writing of any policies, coverages, lines or kinds of insurance**, at any time it deems it advisable to do so, and without notice to or consent of the Agent").

(Nationwide's Memorandum, pp. 1 and 12, Doc. 19, Pageid#: 98 and 109.) Paragraph 13 of Mr. Potter's Agreement, titled "Pricing, Products, Rules and Regulations," consists of three sections. The first section is the paragraph to which the *Nemier* decision is directed, reproduced below with *all* of the language omitted by Nationwide highlighted:

> 13.     **Pricing, Products, Rules and Regulations. The insurance business being subject to changing laws, regulations and conditions,** it is understood and agreed that **each Company will prescribe rules, regulations, prices and terms under which it will insure risks, and** each Company retains the right to change, alter or amend **such rules, regulations, prices and terms, including the right to limit, restrict, or discontinue entirely the acceptance of writing any policies, coverages, lines or kinds of insurance,** at any time it deems advisable to do so, and without notice to or consent of the agent, **and any such change, alteration, amendment or**

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
2
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 5 of 47   Pageid#: 165

> **limitations shall become effective on the date specified by
> the Company.**

(Exhibit A to Complaint, Corporate Agency Agreement ¶ 13, 1st section, Doc. #1-2, Pageid# 32.) The

remaining two sections of Paragraph 13 describe computerization of transactions and record-keeping,

ultimately phasing out hard copy transactions -- in other words, the business mechanics of selling

regulated insurance products.

Neither the *Nemier* decision nor Mr. Potter's assent to Paragraph 13 of his Agreement -- both

of which are directed to the sale of regulated insurance products, ***not*** the agency relationship --

provides any support for Nationwide's sweeping assertions that it can ignore the basic principles

governing contract interpretation in the rest of the Agency Agreement, arbitrarily eliminate both

components of Mr. Potter's Agency Security Compensation prior to terminating the Agreement on

July 1, 2020, and invent an "ownership" theory that appears nowhere in the contract, for

anticompetitive purposes and to extort large amounts of money from its agents before terminating

their contracts.

## ARGUMENT

## I.     NATIONWIDE'S MOTION SHOULD BE DENIED AS TO COUNTS 1 AND 2 BECAUSE THE AGENCY AGREEMENT LIMITS NATIONWIDE'S RESERVATION OF DISCRETIONARY POWER

In the Agency Agreement, Nationwide expresses its intent to continue DCIC and Extended

Earnings "indefinitely," but reserves the right to amend or terminate the compensation plan "to

protect the Agency and Nationwide against unforeseen conditions." (Complaint, Exhibit A,

Corporate Agency Agreement ¶ 12(h), Doc. 1-2, Pageid#: 32.)  Nationwide's core argument is the

"unforeseen conditions" language is a superfluity that has no meaning. Throughout its brief,

Nationwide suggests it can do whatever it wants under the contract because it has unfettered

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS

3

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 6 of 47   Pageid#: 166

discretion. (Nationwide's Memorandum pp. 9-14, Doc 19, Pageid#: 106-111.) But if section 12(h) of the Agency Agreement were accorded no meaning, there would be no contract at all. Nationwide's argument misconstrues contract interpretation fundamentals and wholly ignores the plain language of the Agency Agreement.

**A.** **Nationwide's Discretion Under The Express Provisions Of The Contract Is Limited**

The Agency Agreement provisions governing the amendment or termination of the agent compensation plan – DCIC and Extended Earnings – are carefully crafted to limit Nationwide's exercise of discretionary authority. Paragraph 12(h) of the Agency Agreement states

> Nationwide hopes and expects to continue the Agency Security Compensation Plan indefinitely, and every effort has been made to meet future conditions. ***In order to protect the Agency and Nationwide against unforeseen conditions, however, the right to amend or terminate this plan is necessarily reserved by Nationwide.*** Nationwide may terminate this plan by notification, at least sixty (60) days prior to such termination, in writing. No change in the Plan or termination, however, can alter or modify rights or benefits received or credited prior to such change or modification.

(Complaint, Exhibit A, Corporate Agency Agreement ¶ 12(h), Doc. 1, Pageid# 32.) Nationwide contends the "unforeseen conditions language" is a mere superfluity with no meaning. Nationwide's argument is misguided for at least three reasons.

First, every word in a contract is presumed to be operative. The Supreme Court of Virginia consistently cautions against reading language out of a contract:

> The contract is to be construed as a whole, and effect given to every provision thereof if possible. No word or paragraph can be omitted in construing the contract if it can be retained and a sensible construction given to the contract as a whole. No word or clause is to be treated as meaningless if any reasonable meaning consistent with the other parts of the contract can be given to it; and no word or clause should be discarded unless the other words are so specific and

---
**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
4
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 7 of 47   Pageid#: 167

> clear in contrary meaning as to convincingly show it to be a false
> demonstration.

*Ames v. American Nat'l Bank*, 163 Va. 1, 38-39 (1934). It is a "familiar principle" that "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36 (1995). *See also PMA Capital Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 357 (2006) (accord); *American Health Ins. Corp. v. Newcomb*, 197 Va. 836, 842-43 (1956) ("The presumption always is that the parties have not used words aimlessly and that no provision is merely a superfluity unless it is plainly merely a repetition."). A court construing a contract has the duty to give every clause some meaning. *Quesenberry v. Nichols*, 208 Va. 667, 673 (1968) ("Where possible, it is our duty to give every clause of the policy some meaning."). The Court should reject Nationwide's bid to turn this presumption against superfluity on its head by wiping the "unforeseen conditions" clause from the face of the contract.

Nationwide argues the Court should ignore the language of the contract and that it is free to do whatever it wants with Mr. Potter's DCIC and Extended Earnings benefits. Nationwide does not even attempt to identify any "unforeseen condition," much less an unforeseen condition that affects both Nationwide **and** the Potter Agency. It is apparent that no unforeseen condition affecting the parties has occurred. Nationwide cannot escape the consequences of the express contractual language, which is a conclusive memorialization of the parties' intent. *Stonega Coal & Coke Co. v. Louisville & N. R. Co.*, 106 Va. 223 (1906) ("[W]hen a breach of it is averred its language must determine to what the parties to it have bound themselves.").

Second, Nationwide's strained contention that the "unforeseen conditions" clause is surplusage is belied by other provisions of the Agency Agreement. "[A]ll of the provisions of a

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
5
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 8 of 47   Pageid#: 168

contract should be construed together and those which appear to conflict should be harmonized whenever it is reasonably possible." *Seward v. American Hardware Co.*, 161 Va. 610, 626 (1933). *See also Hutchison v. King*, 206 Va. 619, 624-25 (1965) ("Where provisions of an instrument appear to be mutually conflicting, the provisions should be reconciled where . . . reasonable basis for reconciliation is afforded by the language of the instrument."); *Pettibone Wood Manufacturing Co. v. Pioneer Construction Co.,* 203 Va. 152, 157 (1961) (rejecting as "unreasonable and illogical" a reading of a contract that would put the contractor "at the mercy" of the owner as an interpretation to be avoided). "In other words, 'the meaning of a contract is to be gathered from all its associated parts assembled as a unitary expression of the agreement of the parties." *Stacy v. Stacy*, 53 Va. App. 38, 48 (2008); *Guan v. Ran*, 2017 Va. App. LEXIS 30, at *32, 2017 WL 487100 (Va. App. Feb. 7, 2017) (holding "contracts must be considered as a whole without giving emphasis to isolated terms").

Section 17 of the Agency Agreement states the contract may not be "changed, altered, or modified" except by a "writing signed by [the Potter] Agency and an officer of Nationwide." (Complaint, Exhibit A, Corporate Agency Agreement ¶ 17, Doc. 1-2, Pageid#: 33.) Nationwide posits that Section 12(h) gives it a specific right to modify, but it reads out the requirement that the modification must occur "in order to protect the agency and Nationwide from unforeseen conditions." Absent the precondition, however, the general right to modify the agreement by mutual assent in Section 17 does not reconcile with what Nationwide claims is now an absolute, unilateral right in Section 12(h). Put differently, if Nationwide is correct that it has a blanket right to unilaterally and without reason eliminate Mr. Potter's benefits compensation, Section 12(h) is fundamentally inconsistent with the assurance that Nationwide conveyed to the agents in the general

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
6
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 9 of 47   Pageid#: 169

modification term in Section 17. Only the precondition takes Section 12(h) out of the ambit of the mutual assent requirement. The Court should give preference to the harmonious construction of the contract, which gives meaning to both the "unforeseen conditions" precondition in Section 12(h) as well as the general modification requirement of Section 17.

Finally, Nationwide communicated to its agents on multiple platforms its intent to continue DCIC and Extended Earnings barring an unforeseen shift in business or market conditions that would affect both the agency and Nationwide. Contract interpretation is an objective endeavor governed by what the parties in fact communicate, rather than by secret, subjective intent. *Lynnhaven Beach & Park Co. v. Moore*, 156 Va. 683, 695 (1931) ("In effect, therefore, it is not the real intent, but the intent expressed or apparent in the writing which is sought.") (quoting 2 Williston on Contracts, Section 810, part 2); *Stacy v. Stacy*, 53 Va. App. 38, 48 (2008) ("The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and the courts are bound to say that the parties intended what the written instrument plainly declares."); *Guan v. Ran*, 2017 Va. App. LEXIS 30, at *32, 2017 WL 487100 (Va. App. 2017) (accord). When assessing a party's intent, it is the party's outward expression rather than unexpressed intention that governs:

> The mental assent of the parties is not requisite for the formation of a contract. If the words or other acts of one of the parties have but one reasonable meaning, his undisclosed intention is immaterial except when an unreasonable meaning which he attaches to his manifestations is known to the other party.

*Lucy v. Zehmer*, 196 Va. 493, 502-03 (1954) (internal citation omitted). "A meeting of the minds requires a **manifestation** of mutual assent, and a party's mental reservation does not impair the contract he purports to enter." *Wells v. Weston*, 229 Va. 72, 79 (1985) (emphasis in original).

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
7
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 10 of 47   Pageid#: 170

The express terms of the contract require Nationwide to exercise discretion to terminate or modify the compensation plan "[i]n order to protect the Agency and Nationwide against unforeseen conditions." (Complaint, Exhibit A, Corporate Agency Agreement ¶ 12(h), Doc. 1-2, Pageid#: 32.) This limitation on Nationwide's discretion is consistent with the explicit intent of the parties "to continue the Agency Security Compensation Plan indefinitely." (*Id*.) The Court needs to look no further than the plain terms of the Agency Agreement in order to determine that Nationwide is not at liberty to alter or eliminate Mr. Potter's compensation benefits package except in one limited circumstance.

To the extent Nationwide attempts to inject ambiguity into the contract by challenging these express terms, subsequent statements by Nationwide which are extrinsic to the contract reaffirm Nationwide's objective communication to Mr. Potter that his benefits could not be curtailed at the whim of Nationwide. Nationwide's proposed Addendum, attached to the Complaint as Exhibit C (Doc. 1-4, Pageid#: 40-44), confirms Nationwide's expressed intent to permit the unilateral modification of the benefits package only if unforeseen conditions require this extreme measure. The proposed Addendum states in relevant part:

> Agent acknowledges that nothing contained in this Compensation Choice Addendum prevents or precludes Nationwide from unilaterally modifying or making changes to: (1) the Agent Security Compensation provisions of Agent's IC Agreement; or (I) the applicable General Conditions and Schedules ***if, in its sole discretion, Nationwide determines that such changes are necessary to address changing business and/or market conditions.***

(Complaint, Exhibit C, proposed Addendum p. 2, Doc. 1-4, Pageid#: 42 (emphasis added).) The proposed Addendum is objective evidence of Nationwide's intent to retain a check upon its discretion under the Agency Agreement. Nationwide expresses in no uncertain terms in the proposed

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS

8

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 11 of 47   Pageid#: 171

Addendum its view that its discretion is limited to address business or market conditions. Crucially, this declaration of Nationwide's intent comes in a communication nearly **twenty years** after Mr. Potter's Corporate Agency Agreement was executed. These factors combine to create in Mr. Potter the reasonable, justified expectation that Nationwide may not unilaterally terminate his DCIC and Extended Earnings for any reason or no reason at all. It may do so only for the purpose stated in the contract.[1]

In sum, Nationwide's theory of unchecked authority under the contract would effectively nullify the Agency Agreement. It is difficult to imagine a more clear-cut example of contractual overreach. Nationwide's misguided construction of the Agency Agreement must yield to the strong presumption that the "unforeseen conditions" language is operative, the requirement that such language be construed in harmony with other contractual terms like Section 17, and Nationwide's reaffirmation of the "unforeseen conditions" requirement twenty years later in the proposed Addendum.

**B.    Assuming, *Arguendo*, That Nationwide's Unilateral Amendment Qualifies As An Exercise Of Discretionary Power, Its Exercise Of Discretion Violates The Implied Covenant Of Good Faith And Fair Dealing**

If the "unforeseen conditions" clause in section 12(h) of the Agency Agreement is operative, the Court need not consider contingent arguments regarding the implied covenant of good faith and fair dealing. But assuming, *arguendo*, that the express contractual language has no binding effect upon the parties, Nationwide is still breaching the implied covenant of good faith and fair dealing by curtailing Mr. Potter's DCIC and phasing out Extended Earnings one year before a unilateral

---

[1]This reaffirmation of Nationwide's intent in the 2014 proposed Addendum also suggests that the reason that Nationwide decided to curtail DCIC in 2016 (if there was a reason) must have arisen shortly after Nationwide proposed the Addendum.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
9
Case 2:18-cv-00021-JPJ-PMS    Document 24    Filed 09/19/18    Page 12 of 47    Pageid#: 172

termination of the contract by Nationwide, in order to drive Mr. Potter into a set of expensive "options" that he would prefer to avoid.

"In Virginia, every contract contains an implied covenant of good faith and fair dealing." *Wolf v. Fed. Nat. Mortg. Ass'n*, No. 11-2419, 512 Fed. Appx. 336, 2013 U.S. App. LEXIS 4300, 2013 WL 749652, at *8 (4th Cir. Feb. 28, 2013) (unpublished) (quoting *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)); *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998) (recognizing the covenant in a mining contract based on a Virginia court decision); *Land & Marine Remediation, Inc. v. BASF Corp.*, No. 2:11CV239, 2012 U.S. Dist. LEXIS 88601, 2012 WL 2415552 (E.D. Va. Jun. 26, 2012) (observing the covenant applies to leases); *SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of North Carolina*, 806 F. Supp. 2d 872, 893-95 (E.D. Va. 2011) (examining in detail the application of the implied covenant of good faith and fair dealing under Virginia law and concluding there is no reason to distinguish between contracts covered by the Uniform Commercial Code and the common law); *Enomoto*, 624 F. Supp. 2d at 450 (recognizing the implied covenant of good faith and fair dealing in a space flight contract). *See also* Steven J. Burton & Eric G. Anderson, Contractual Good Faith 46-47 (1995) ("The courts could leave all discretion in performance unbridled. . . . No U.S. court now takes this approach . . . . Thus, contractual discretion is presumptively bridled by the law of contracts -- by the covenant of good faith implied in every contract.").

By raising his breach of an implied duty of good faith and fair dealing claim as part of the breach-of-contract claims in Counts I and II, Mr. Potter raises the claim in the right context. *Stoney Glen*, 944 F. Supp. 2d at 466 ("Plaintiffs bring their breach of an implied duty of good faith and fair dealing claim as part of their count for breach of contract. Accordingly, Plaintiffs have raised the

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
10
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 13 of 47   Pageid#: 173

claim in the right context and the question becomes whether they have properly alleged a breach of the duty.") (internal citations omitted).

Mr. Potter alleges "even assuming, arguendo, that Nationwide's unilateral amendment qualifies as an exercise of discretionary power reserved by nationwide, that exercise of discretion would be in breach of the implied covenant of good faith and fair dealing, which requires faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." (Complaint ¶ 59, Doc. 1, Pageid#: 14.) Nationwide, for its part, does not proffer any good faith basis for eliminating DCIC and phasing out Extended Earnings one year before unilaterally terminating the contract. It has none. Nationwide's only argument is that the covenant does not apply because it is not breaching the contract. "[B]ecause these Counts [I and II] fail to state breach-of-contract claims, the Court should dismiss their tagalong implied-covenant claims," Nationwide intones. Nationwide is confused.

The elements of a claim for breach of the implied covenant of good faith and fair dealing are (1) the parties are in a contractual relationship, and (2) a breach of the implied covenant. *Stoney Glen*, 944 F. Supp. 2d at 466. The covenant may be breached in two ways: (A) when the purported exercise of a contractual right is dishonest, rather than merely arbitrary, and (B) where a party has discretion in performance, it cannot act arbitrarily or unfairly. *Id.*; *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535 (4th Cir. 1998) (emphasis in original) ("[A]lthough the duty of good faith does not prevent a party from exercising its explicit contractual **rights**, a party may not exercise contractual **discretion** in bad faith, even when such discretion is vested solely in that party."); *Stoney Glen, LLC*, 944 F. Supp. at 465; *Historic Green Springs, Inc. v. Brandy Farm, Ltd.*, 32 Va. Cir. 98, 102-03 (Va. Cir. Louisa Cnty. 1993) (accord).

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
11

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 14 of 47   Pageid#: 174

The factual allegations in the Complaint support the conclusion that Nationwide is acting dishonestly. Nationwide is the drafter of the Agency Agreement, a contract it used with its exclusive agents, including Mr. Potter, until it began to make changes in the 2000s. (*See generally* Complaint, Exhibit A, Corporate Agency Agreement, Doc. 1-2, Pageid##: 21-35.) Nationwide includes in the contract a statement that DCIC and Extended Earnings are expected to continue "indefinitely," and Nationwide reserves the right to amend or terminate the plan " [i]n order to protect the Agency and Nationwide against unforeseen conditions." (Complaint, Exhibit A, Corporate Agency Agreement ¶ 12(h), Doc. 1-2, Pageid#: 32.) Nationwide places this language in a paragraph it construes as otherwise fully operative. (Nationwide does not place the clause in the preface of the contract with recitals.) Nearly twenty years later, Nationwide reaffirms in the proposed Addendum its objectively communicated intent that amendment or termination of DCIC and Extended Earnings is appropriate only when "necessary to address changing business and/or market conditions." (Complaint, Exhibit C, proposed Addendum p. 2, Doc. 1-4, Pageid#: 42.) Nationwide at every step leads agents to believe their benefits are secure barring a catastrophic market event. Now, Nationwide declares this was never its subjective intent. Nationwide's objective broadcast to agents like Mr. Potter that these benefits were to continue "indefinitely" does not square with the unannounced, subjective intent it now asserts.

The purpose of Nationwide's about face coincides with its decision to terminate all exclusive agency contracts on July 1, 2020. The Complaint describes a "scheme" on the part of Nationwide to "confiscate substantial portions of the post-termination retirement packages to which the agents are contractually entitled." (Complaint ¶¶ 3-5, 30-40, 51-52, 59-60, Doc. 1, Pageid##: 2, 7-11, 12-13, 14-15.) "[C]ontinuing with the scheme," Mr. Potter states, "Nationwide announced a plan to

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
12
Case 2:18-cv-00021-JPJ-PMS    Document 24    Filed 09/19/18    Page 15 of 47    Pageid#: 175

terminate all of its exclusive agent contracts by July 1, 2020, via a set of complex arrangements designed to confiscate further portions of the agents' retirement packages and generate a massive wealth transfer from the agents to Nationwide." (Complaint ¶ 4, Doc. 1, Pageid#: 2.)

Nationwide is also exercising discretion arbitrarily and unfairly. Nationwide's argument with respect to Counts I and II hinges upon the notion that it has "sole discretion" to modify or terminate the agency compensation plan. (Nationwide's Opposition at pp. 10-11, Doc. 19, Pageid##: 107-108.) On April 16, 2018, Nationwide announced a mass unilateral termination of all exclusive agent agreements effective July 1, 2020. (Complaint ¶ 32, Doc. 1, Pageid#: 8.) At the same time, Nationwide also announced it would "interrupt the normal functioning of the contract by eliminating the Extended Earnings component of the ASC plan during the year preceding the July 2020 termination" (Complaint ¶ 33, Doc. 1, Pageid#: 8) and then tied that to its "options":

> Having sufficiently intimidated the agents with the prospect of a unilateral at-will termination on July 1, 2020 with No Extended Earnings, Nationwide then turns to "options" that it is offering the agents as a way to escape that dire consequence . . . Essentially, Nationwide is using the threat of a unilateral at-will termination with no Extended Earnings to coerce exclusive agents like Mr. Potter into agreements which require them to "buy" their books of business from Nationwide in order to continue with their clients after the exclusive contracts are terminated.

(Complaint ¶ 36, Doc. 1, Pageid#: 9.)

Nationwide is well aware of the significance of eliminating the Extended Earnings benefit, taking pains to refer to it three times in the April 19, 2018 announcement:

> As a result, you will not receive any [extended earnings] should your P&C exclusive agent contract be cancelled on or after July 1, 2020 . . .
>
> ***
>
> Please note the above applies to extended earnings contract provisions.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS

13

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 16 of 47   Pageid#: 176

***

> Again, you will receive no [extended earnings] should your P&C
> exclusive agent contract be canceled on or after July 1, 2020.

(Complaint ¶ 35, Doc. 1, Pageid#: 9.) Nationwide's transparent purpose is to "us[e] the threat of a unilateral at-will termination of the Agency Agreement with no Extended Earnings to coerce exclusive agents like Mr. Potter into agreements which require them to 'buy' their books of business from Nationwide in order to continue with their clients after the exclusive contracts are terminated." (Complaint ¶ 36, Doc. 1, Pageid#: 9.) That purpose is a corrupt one because it distorts the contractual objectives of the parties. It is essentially a land-grab by Nationwide. Nationwide may terminate the Agency Agreement. It may not under the contract cut off Extended Earnings one year prior to that termination in order to force agents to pay Nationwide for assets that belong to each agency.

Mr. Potter's justified expectation that Nationwide will not frustrate the operation of the contract goes to the heart of his claim that Nationwide is breaching the covenant of good faith and fair dealing. As the Restatement in a comment explains, "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Restatement of the Law 2d, Contracts, Section 205, comment a (1981). The United States Court of Appeals for the Fourth Circuit, in *Darden v. Nationwide Mut. Ins. Co.*, has already made the determination that Nationwide has created a justified expectation that benefits will be paid in the future by engaging exclusive agents in an agreement to provide such benefits. 796 F.2d 701, 707 (1986). There, the Court considered an Agency Agreement like Mr. Potter's to determine whether another exclusive agent was an independent contractor or employee for purposes of the Employee Retirement Income Security Act ("ERISA"). *Id.* at 706-707. "By establishing a comprehensive retirement benefits program for its insurance agents, nationwide

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
14

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 17 of 47   Pageid#: 177

created a reasonable expectation on [the plaintiff's] part that benefits would ultimately be paid to him," the Court explained. *Id.* at 707. "There is also evidence in the record indicating [plaintiff's] reliance on that expectation." *Id.*

The Supreme Court granted a writ of certiorari to decide whether the Fourth Circuit had used the correct test to determine the employee v. independent contractor issue. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992). The Supreme Court rejected the test applied by the Fourth Circui, *Id.* at 326-27, stating that the error in the Fourth Circuit's test was that it "would turn not on a claimant's actual 'expectations,' which the court effectively deemed inconsequential, but on his statutory entitlement to relief, which itself depends on his very status of employee." *Id.* at 327. "This begs the question," the Supreme Court stated, directing that the common law test for determining the employee v. independent contractor issue be used instead. *Id.* The Supreme Court's decision accepted the Fourth Circuit's conclusion that the agent had a justified expectation he would receive his DCIC and Extended Earnings, but that expectation was tempered by the forfeiture for competition clause in the Agency Agreement.

Mr. Potter's contract has the same forfeiture for competition clause. Paragraph 12(f) of the Agency Agreement states Nationwide's liability for Agency Security Compensation would terminate upon the occurrence of any one of several circumstances occur, including: Plaintiff's acting as an insurance agent or having any involvement in the insurance business within one year following the cancellation of the agreement, and within a 25-mile radius of plaintiff's business location at the time of cancellation; plaintiff's failure to return all records and supplies furnished by Nationwide during the course of the contract within 10 days; plaintiff's solicitation or attempt to solicit, inducing or attempting to induce policyholders to lapse, cancel or replace any insurance contract in force with

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
15
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 18 of 47   Pageid#: 178

Nationwide or furnishing the name of any policyholder to facilitate solicitation by others. (Complaint, Exhibit A, Corporate Agency Agreement, ¶ 12(f), Doc. 1-2, Pageid#: 31.)

But here, unlike in *Darden*, the forfeiture clause **does not dilute Mr. Potter's justified expectation** that he would receive DCIC and Extended Earnings. *See, e.g., Cray v. Nationwide Mut. Ins. Co.*, 136 F. Supp 171, 178-80 (W.D. N.Y. 2001). In *Cray*, the Western District of New York considered the enforceability of the same forfeiture clause in another agency agreement. *Id*. at 178. Adopting the reasoning of *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 NY2d 84 (1979), the court framed the analysis as follows:

> [W]here an employee is involuntarily discharged by his employer without cause and thereafter enters in to competition with his former employer, and where the employer based on such competition, would forfeit the pension benefits such competition would forfeit the pension benefits earned by his former employee, such a forfeiture is unreasonable as a matter of law and cannot stand.

*Cray*, 136 F. Supp. 2d at 178. "An employer should not be permitted to use offensively an anticompetition clause coupled with a forfeiture provision to economically cripple a former employee and simultaneously deny other potential employers his services." *Id.* Guided by these precepts, the *Cray* court explicated a bifurcated approach to such provisions. If the contract is terminated for cause, the forfeiture for competition clause may or may not be enforceable, depending on other factors. *Id.* at 179-80. But if the contract is terminated at will by Nationwide, the forfeiture for competition provision is unenforceable. *Id.*

Virginia courts follow an approach consistent with *Cray*. Both state and federal courts that have considered the enforceability of forfeiture provisions have applied the bifurcated analysis adopted by the *Cray* court. See *Rochester Corp. v. Rochester*, 450 F.2d 118 (4th Cir. 1971) (holding a forfeiture clause is enforceable when plaintiff resigned); *Nationwide Mutual Ins. Co. v. Tatem*, 210

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
16
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 19 of 47   Pageid#: 179

Va. 693 (1970) (permitting a forfeiture provision to be enforced where the agent breached his agency agreement with Nationwide). The inverse of *Tatem* and *Rochester* is the case at bar. Unlike the for-cause termination and resignation at issue in those cases, Mr. Potter faces a **unilateral at-will termination of his Agency Agreement by Nationwide**. The forfeiture clause is therefore unenforceable as a matter of law, and Mr. Potter's justified expectations are not diluted by the "forfeiture for competition" provision.

Nationwide presumably knows the forfeiture clauses in Agency Agreements like Mr. Potter's will be unenforceable when it executes its mass at-will termination on July 1, 2020. This no doubt forms part of Nationwide's motivation in phasing out Mr. Potter's extended earnings so that he will be forced into one of Nationwide's "options" and not allowed to complete his contract in normal fashion.

Thus, even assuming Nationwide's unilateral amendment qualifies as an exercise of discretionary power, Mr. Potter sufficiently pleads a breach of the implied duty of good faith and fair dealing, by alleging that Nationwide has concocted a scheme "designed as a massive wealth transfer from the exclusive agents to Nationwide." (Complaint ¶ 36, Doc. 1, Pageid#: 9.) That aim runs afoul of the "agreed common purpose and consistency with the justified expectations of the other party." Restatement of the Law 2d, Contracts, Section 205, comment a (1981).

## II. NATIONWIDE'S MOTION SHOULD BE DENIED AS TO COUNT 3 BECAUSE NATIONWIDE DOES NOT OWN MR. POTTER'S BOOK OF BUSINESS

### A. Mr. Potter's Corporate Agency Agreement Does Not Address Mr. Potter's Book Of Business

Black's Law Dictionary, p. 218 (10th Ed.) defines "book of business" as follows:

> **book of business.** (1959) **1.** A salesperson's list of accounts or clients. • Traditionally, the phrase is used in reference to financial

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
17
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 20 of 47   Pageid#: 180

advisers, ***insurance agents***, private bankers, investment bankers, and financial planners. **2.** By extension, an experienced lawyer's roster of stable clients who are loyal enough to the lawyer to continue sending legal work to that lawyer regardless of which firm the lawyer might become affiliated with. (Emphasis added.)

(Complaint ¶ 37, Doc. 1, Pageid#: 10.)

Mr. Potter is a self-employed salesperson – an independent contractor insurance agent, with a Book of Business that is the essential tool of his trade. Mr. Potter's Book of Business consists of a roster of his clients and prospects (including clients currently placed with Nationwide, clients currently placed with other insurers under contractually-permitted brokerage and outplacement arrangements, clients formerly placed with Nationwide and other insurers, and prospects who have not been placed with any insurer), along with addresses, contact points, personal information including gender and marital status, current business relationship (client, former client, prospect, etc.), and pertinent information concerning their insurance needs. (*Id*. ¶ 38, Doc. 1, Pageid#: 10.)

The governing Corporate Agency Agreement (Exhibit A to the Complaint) emphasizes that the Potter Agency is an independent contractor for all purposes (Complaint, Exhibit A, Corporate Agency Agreement ¶ 1, Doc. 1-2, Pageid#: 24), responsible for all expenses in connection with the operation of the agency (*Id.* ¶ 2, Doc. 1-2, Pageid#: 24), including all expenses associated with the development of the client base that forms the Book of Business of the agency, the essential tool of the trade of an independent contractor insurance agency. (Complaint ¶ 63, Doc. 1, Pageid#: 15.)

The Corporate Agency Agreement states that "it will be necessary for Nationwide to provide the Agency with certain manuals, forms, records, and such other materials and supplies as are necessary in the conduct of an insurance business" which are "company property" and must be returned to Nationwide upon cancellation of the Agreement (Complaint, Exhibit A, Corporate

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
18
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 21 of 47   Pageid#: 181

Agency Agreement ¶ 1, Doc. 1-2, Pageid#: 24). These manuals, forms, records, etc. to be provided by Nationwide do not constitute any portion of Mr. Potter's Book of Business. Nationwide has no idea who any of Mr. Potter's clients are unless and until Mr. Potter submits insurance applications to Nationwide on their behalf. (Complaint ¶ 64, Doc. 1, Pageid#: 16.)

The term "book of business" does not appear in Mr. Potter's Corporate Agency Agreement. While Nationwide may be trying to characterize its own policyholder records as a book of business for purposes of this case, it is clear that the only book of business at issue in Count 3 is ***Mr. Potter's*** book of business. Mr. Potter is an ***independent contractor insurance agent***, not an insurance company. He does not issue insurance policies, and his book of business is not a set of policies. Mr. Potter's book of business, as defined by Black's Law Dictionary, is ***his set of clients***, with whom he could expect to do business in the future, whatever his business affiliation might be.

**B.    The Predominant Line Of Decisions Construing The Potter Contract Form Holds That Nationwide Does Not Own The Agent's Book Of Business**

In 1999, Nationwide commenced an action against a group of exclusive agents in Pennsylvania, who had resigned their agreements with Nationwide, taken their books of business with them, and begun to place their clients with other insurers. Noting that the agents had entered into exclusive agency agreements, Nationwide asserted, *inter alia*, that the agents had breached their contracts by taking policyholder information that belonged to Nationwide.

On cross-motions for summary judgment, the Western District of Pennsylvania, construing the same basic contract form that Mr. Potter has, denied Nationwide's motion with a comprehensive analysis concluding that Nationwide did not own the agent's book of business. *Nationwide Mut. Ins. Co. v. Fleming*, No. 99-1417, 2001 U.S. Dist. LEXIS 26739 (W.D. Pa., Oct. 2, 2001). The analysis

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
19
Case 2:18-cv-00021-JPJ-PMS    Document 24    Filed 09/19/18    Page 22 of 47    Pageid#: 182

included references to corroborating materials from many other cases, including two Nationwide

cases:

> [The Agents] note [the Nationwide Companies] previously have argued to the United States Supreme Court in *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 112 S. Ct. 1344, 117 L. Ed. 2d 581 (1992), that the contract language in question does not give them an ownership right in the customer information and assert that this prior litigation position substantially undermines and/or estops [Nationwide] from asserting a contrary position in the instant litigation.[2] [The Agents] also assert various rulings by the court in *Nationwide Mutual Ins. Co. v. Stenger*, 695 F.Supp. 688 (D.Conn. 1988), long ago placed [Nationwide] on notice that the contract documents, lease agreements and provisions of company policy in question do not provide [Nationwide] with a proprietary or protectable interest in the information copied and retained by the defecting agent defendants. [citations omitted]

*Nationwide Mutual Ins. Co. v. Fleming* at *21.

With that background, the *Fleming* decision then presented its own comprehensive analysis,

applying standard contract interpretation principles to the question at issue here – whether the Potter

contract form supports Nationwide's position that it owns Mr. Potter's book of business:

> ***The agency agreements likewise do not vest in [Nationwide] ownership or the right to control dissemination of the names of customers generated through the agent defendants' efforts and expenses.*** Where there is a dispute as to the meaning of the terms of a contract, the court's task is to interpret the language of the agreement in conformance with the intent of the parties at the time of contracting. *Fineman v. Armstrong World Industries, Inc*., 980 F.2d 171, 215-16 (3d Cir. 1992), cert. denied, 507 U.S. 921, 113 S. Ct. 1285, 122 L. Ed. 2d 677 (1993). "[W]hen a written contract is clear and unequivocal, its meaning must be ascertained by its contents alone." Department of *Transportation v. Manor Mines. Inc*., 523 Pa.

---

[2]In *Darden*, Nationwide was fending off a claim that the agents should be classified as ***employees***, rather than independent contractors, in order to lock in the extended earnings and DCIC obligations under ERISA. This apparently led Nationwide to take a position for ***that*** purpose which directly contradicts the position it is taking in the case at bar.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
20
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 23 of 47   Pageid#: 183

112, 565 A.2d 428, 432 (Pa. 1989) (citing, inter alia, *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (Pa. 1982)). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (Pa. 1986). It is the court's function to determine whether an ambiguity exists. *Manor Mines*, 565 A.2d at 432. The determination is to be based upon the entire contract, taking into consideration the surrounding circumstances, the situation of the parties when the contract was made, the objects they apparently had in mind at that time and the subject matter of their agreement. *Lower Frederick Township v. Clemmer*, 518 Pa. 313, 543 A.2d 502, 510 (Pa. 1988).

*Here, the agency agreements did not explicitly or implicitly create a covenant providing [Nationwide] with exclusive ownership of the names of policyholders generated and maintained by the agent defendants.* To the contrary, the agent's agreement specifically contemplated the agent's solicitation and servicing of prior policyholders at the expense of a liquidated damages provision unless the agent was precluded from engaging in such activity as a result of a restrictive covenant contained in the agreement. The restriction against soliciting and servicing the policyholders of Nationwide applied if the agreement was canceled "within a period of five years from the date of [the agent's] first contract" with plaintiffs. If triggered the restrictive covenant remained in effect for one year after cancellation and prohibited such activity within a twenty-five mile radius of the agent's last business location. Upon cancellation of the agreement after five years of service the agent is not prohibited from soliciting or servicing the prior policyholders of [Nationwide]...[3]

* * *

*Here, the information copied by the agent defendants did not include actual manuals or underwriting information and guidelines utilized by plaintiffs. Instead, the content consisted of information possessed by the insureds that could be obtained by merely requesting its disclosure from them. The policyholders had every incentive and right to disclose such information to entities offering competitive services in the market.* And those prior policyholders who elected to purchase competitive policies after the agent defendants terminated their relationships with [Nationwide] effectively authorized the disclosure of such information. Under such

---

[3]In this case, the Potter Corporate Agency Agreement specifies that the restrictive covenant expired May 1, 1994 (Exhibit A to Complaint ¶ 11, Doc. #1-2, Pageid#: 26.)

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
21

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 24 of 47   Pageid#: 184

circumstances [Nationwide] may not invoke the protections afforded to confidential proprietary and trade secret information.

> *[Nationwide's] attempts to shoehorn such information into the protections afforded to certain property by various provisions of the contractual relationship between the parties is without persuasive force.* The agents' agreements specifically addressed post-cancellation competition, but did not restrict the agent defendants from using the information gained during the course of their service, nor did the agreements provide [Nationwide] with proprietary ownership over that information. *Policyholder information was not a "manual, form, record [or] such other material" supplied by [Nationwide] to the exclusive agents and as a result it does not fall within the provisions of paragraph one of the agent's agreement, which expressly retained [Nationwide's] ownership of such materials and supplies.*
>
> * * *
>
> It is clear from the above that [Nationwide] may not maintain the claimed proprietary right in the copied information from the policyholder files *to the extent the policyholders were developed or maintained at the agent defendants' efforts and expenses*. It likewise follows a fortiori that [Nationwide] cannot maintain causes of action for post-termination competition based on the use of customer lists and policyholder information. Accordingly, summary judgment will be granted on Count V.

*Nationwide Mut. Ins. Co. v. Fleming*, *34 - *44 (footnotes omitted, emphasis added.)

See also, *Nationwide Mutual Insurance Co., et al. v. Elizabeth A. Fisher*, Civ. Action No. 1:101-cv-63, United States District Court for the Northern District of New York, Memorandum-Decision and Order of March 7, 2001 (denying Nationwide's motion for a preliminary injunction on a breach of contract claim against a former agent, who was using information given to her by her policyholders to compete with Nationwide after canceling her contract):

> [Nationwide] contend[s] that under paragraph 1 of the Agent's Agreement, which governs [Ms. Fisher's] relationship with [Nationwide], [Ms. Fisher] is required to return any policyholder files she possesses to [Nationwide]. Specifically, [Nationwide] assert[s] that the clause "on behalf of the Companies" is that paragraph "relates to information that the potential policyholder gives to the

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS

22

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 25 of 47   Pageid#: 185

Agent so that a policy of insurance can be quoted." See [Nationwide's] Reply Memorandum of Law at 4. [Nationwide] explain[s] further that "[t]his quoting of a policy premium is only possible through the sysntheses [sic] of personal information from the potential policyholder with the underwriting and premium formulas on the Nationwide computer system. The information on both sides of this synthesis is protected in both contract and law."

Paragraph 1, "Independent Contractor," of the Agent's Agreement provides that

> Insurance being a closely regulated business, it is understood that it will be necessary for us [Nationwide] to provide you [Fisher] with certain manuals, forms, records, and such other materials and supplies as are necessary in the conduct of an insurance business. ***All such property furnished to you by the Companies or on behalf of the Companies shall remain the property of the Companies and be returned to them in good condition upon any cancellation of this Agreement.***
> * * *

There are several problems with [Nationwide's] reliance upon paragraph 1. First, this paragraph does not specifically refer to policyholder files. Instead, it lists only "certain manuals, forms, records and such other materials and supplies" which are necessary in the "conduct of an insurance business" and which were furnished to [Ms. Fisher] "by the Companies or on behalf of the Companies." ***The Court is unpersuaded that policyholder files are sufficiently similar to the manuals, forms or records needed to conduct an insurance business to be encompassed within this paragraph.***

Secondly, [Nationwide's] interpretation of the clause "on behalf of the Companies" to include information provided to [Ms. Fisher] by prospective policyholders seems strained at best. ***Prospective policyholders certainly cannot be considered [Nationwide's] agents and, therefore, any information they provide to [Ms. Fisher], while necessary to the underwriting process, is furnished on their own behalf, not on [Nationwide's] behalf.***

***Finally, given [Mr. Fisher's] status as an independent agent, it may be that she has a proprietary interest in this information for which she has expended considerable time, energy, and money to gather.***
* * *

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
23
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 26 of 47   Pageid#: 186

[Ms. Fisher] asserts that the policyholder files do not constitute trade secrets. To support this argument, ***[Ms. Fisher] directs the Court's attention to [Nationwide's] Sales Management Policies Manual, which according to [Ms. Fisher], demonstrates that [Nationwide] believes their policyholder files are of little value.*** Under subheading "C" - "All Career Agents," the manual states in paragraph 1(a),

> If the agent resists the return of records, Sales Management must determine if the records are really needed and the factors to be considered in making that determination are: (1) Size of the agency. (2) the mix of business with particular emphasis on the amount of commercial business in the agency. (3) The region's ability to reproduce the files and the cost consideration in reproducing the files.

> Moreoover, paragraph C(1)(b) of this manual states that "[l]egal action to recover records should only be used when it is necessary to service the business." Paragraph C(1)(c) also provides that "[g]enerally speaking, unless the agency is heavy in commercial, ***the value of the files, per se, is really not worth expensive legal action because the Regional Administrative Manager has the ability to reproduce automobile and homeowner information very rapidly*** at ***minimum cost***, on request." Finally, paragraph C(1)(d) states, in pertinent part, ***"The contract does not clearly define ownership of the documents or materials under 'company ownership' of policyholder files.*** It is better to convince the agent to surrender the files or records, rather than go through expensive legal procedures."

Memorandum-Decision and Order, Doc. 17, pp. 4-7, *Nationwide Mutual Insurance Company, et al.*

*v. Elizabeth A. Fisher* (footnotes and citations omitted) (emphasis added).

See also, *Nationwide Mutual Insurance Co. et al. v. Patricia Bland, et al.*, United States

District Court for the District of Connecticut, Case No. 3:99-cv-02005, Doc. 249 (denying

Nationwide's motion for summary judgment on a breach of contract claim against former agents

using their policyholder information to compete with Nationwide after canceling their contracts):

> In August 1999, the defendants terminated their agency relationships with Nationwide. In the months leading up to the terminations, they met with representatives of other insurance companies to discuss

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
24
Case 2:18-cv-00021-JPJ-PMS    Document 24    Filed 09/19/18    Page 27 of 47    Pageid#: 187

possible employment. During these meetings, they shared with the companies information contained in Nationwide's policyholder files concerning prices, computer print-outs of policyholder information obtained from the AOA computer system ("screen prints"), and copies of documents they received from Nationwide relating to their sales and commissions. They also began to compete against Nationwide without relocating.

\* \* \*

To prevail on its contract and breach of fiduciary duty claims, Nationwide has the burden of proving that the policyholder information at issue constituted a trade secret or confidential information. In addition, it must prove that the forfeiture for competition clause contained in paragraph 11(f) of the Agent's Agreement did not permit the defendants to use the information. [footnotes omitted]

\* \* \*

[Nationwide] points to no contractual provision requiring agents to protect the secrecy of the files, and agents were free under the contract to make and keep their own notes about the contents of the files. See Animal Health Clinic v. Autorino, 1998 Conn. Super. LEXIS 801 at \*8 (Mar. 13, 1998). In addition, **_the forfeiture for competition clause clearly permits departing agents to retain a list of the names of the customers they serviced for Nationwide. With customers' names in their rightful possession, agents can obtain policyholder file information directly from the customers and other sources_**. Fleming, No. 99-1417 at 29.

Ruling and Order, Doc. 249, pp. 5-8, *Nationwide Mutual Insurance Co., et al. v. Patricia Bland, et al.*, Case No. 3:99-cv-02005 (Mar. 31, 2004) (emphasis added).

### C.   Subsequent Attempts By Nationwide To Develop A Separate Basis For Claiming Ownership Of Mr. Potter's Book Of Business Are Unavailing Here

Recognizing that Mr. Potter's contract form does not support a claim that Nationwide owns Mr. Potter's book of business but actually suggests the opposite, Nationwide embarked on a program in the early 2000s to try to develop a separate basis for its claim, to use against all of its exclusive agents. Some of those attempts are resurrected here in Nationwide's Memorandum and can now be addressed separately.

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
25

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 28 of 47   Pageid#: 188

## 1. The 2014 Proposed Addendum (Doc. 1-4)

In December 2013 Nationwide circulated a proposed modification of the agent agreements of all exclusive agents entitled to receive DCIC benefits, including Mr. Potter. Titled "Agent Compensation Choice Addendum," the document offered an opportunity to give up the right to continue to earn and receive DCIC in return for a more favorable compensation schedule. Essentially, the proposal asked agents to elect between these two options:

☐     "remain eligible to earn Deferred Compensation Incentive Credits ("DCIC") until Agent turns age 65 pursuant to the IC Agreement"

or

☐     obtain a more favorable compensation schedule in return for "giv[ing] up the right to earn and receive DCIC for any insurance product sold by Nationwide, as of January 1, 2014"

Mr. Potter's copy, which had an effective date of April 1, 2014, is Exhibit C to the Complaint (Doc. 1-4, Pageid##: 40-44). Mr. Potter selected the first option, electing to "remain eligible to earn [DCIC]" until age 65 "pursuant to" his Corporate Agency Agreement.

The proposed modification did not alter Mr. Potter's Agency Agreement, nor did it constitute a new contract. By rejecting Nationwide's offer to give up his DCIC in return for a more favorable compensation schedule and electing to "***remain eligible* to earn [DCIC]**" until age 65 "***pursuant to***" his Agency Agreement (emphasis added), Mr. Potter was "waiving an opportunity," not making a new agreement. (Complaint ¶ 44, Doc. 1, Pageid#: 11.)

On pages 4-5 of its Memorandum, Nationwide recites gratuitous language which it had added to the proposed modification that Mr. Potter declined:

Agent acknowledges, agrees, and reaffirms that pursuant to the terms of [the Agency Agreement] that Nationwide has *exclusive use, ownership, and control of all Nationwide policies and policy*

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
26

Case 2:18-cv-00021-JPJ-PMS    Document 24    Filed 09/19/18    Page 29 of 47    Pageid#: 189

> *expirations* and has the right to service Natiownide customers at any
> time through any Nationwide distribution point. Agent also agrees
> and acknowledges that Nationwide . . . has exclusive use, ownership
> and control of all policies and policy expirations sold by or through
> the Agent Advantage Networks. [This provision] shall survive
> cancellation, expiration or termination of this [Addendum].

(Nationwide's Memorandum pp. 4-5, Doc. 19, Pageid#: 101-102). That quote is then followed by

this sentence:

> Plaintiffs also agreed [in the Addendum] they have "access to
> Nationwide proprietary information" – including "customer policy
> information," "customer lists, policy expiration dates, policyholder
> and Nationwide customer files" – and promised to "return all
> Nationwide Confidential Information" if the Agency Agreement were
> cancelled.

(Nationwide's Memorandum p. 5, Doc. 19, Pageid#: 102.)

According to Nationwide, this "removes any doubt" that Mr. Potter's Corporate Agency

Agreement awards exclusive ownership of Mr. Potter's book of business to Nationwide. (*Id*. at p.

4, Doc. 19, Pageid#: 101.)

What Nationwide overlooks is that this was a ***proposed*** modification which Mr. Potter

***declined***. He elected to "remain" eligible for DCIC until age 65, "pursuant to" his original

Agreement. The "Addendum," as Nationwide titled it, was neither a modification nor a new contract.

It was simply a rejected proposal with extra gratuitous language, which had no binding effect on Mr.

Potter.

A party has the right to propose a modification to a contract without altering its terms. *See*

*Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 72-73 (1983). But to be effective, a modification,

like the original contract, must be supported by mutual assent and consideration.

> [T]he conduct of the parties must be sufficient to support a finding of
> a mutual intention that the modification be effective and such

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
27
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 30 of 47   Pageid#: 190

> intention must be shown by clear, unequivocal and convincing evidence, direct or implied. And when one party claims that the other party has surrendered a right guaranteed by the contract, the party asserting such modification must prove either passage of valuable consideration, estoppel *in pais*, or waiver of the right.

*Id.* (internal citations and quotation marks omitted); *see also Powell Mountain Joint Venture v. Moore*, 248 Va. 63, 66 (1994) ("A modification cannot occur, however, without the express mutual agreement of the parties."); *Kida v. Chesterfield Veterinary Clinic, Inc.*, 19 Va. Cir, 95, 97 (Chesterfield Cnty. Cir. Ct. 1990) ("It is a well-settled issue that consideration must be shown for a modification to be valid.").

The so-called "Addendum" is simply a proposal to modify Mr. Potter's Corporate Agency Agreement. Mr. Potter refused that proposal by electing to retain the *status quo* under the Agency Agreement, *i.e.* to retain his DCIC and Extended Earnings benefits. There is no mutual assent or consideration to modify the Corporate Agency Agreement in the so-called Addendum. Thus, the proposed Addendum is not a binding contract or modification of the Agency Agreement, and the gratuitous language that Nationwide has identified is not binding on Mr. Potter.[4]

This attempt to come up with a basis for a claim that Nationwide owns Mr. Potters's book of business also suffered from the same fatal flaw that infected most of its attempts, *i.e.*, it conflated Nationwide's **policies** with Mr. Potter's **clients**. As explained above, Mr. Potter is not an insurance company and does not have a collection of policies. He has clients. Conversely, Nationwide does not have any clients. All it has are policies.

---

[4]As explained above in Part I.A. of this Opposition, Nationwide's 2014 proposal has been included as an Exhibit to Mr. Potter's Complaint for a different reason: *i.e.*, it communicates a reconfirmation – 20 years later – that Nationwide will not amend or terminate Extended Earnings or DCIC benefits absent "changing business and/or market conditions."

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
28
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 31 of 47   Pageid#: 191

### 2. The 2000 Systems Service And Support Agreement (Doc. 19-1)

Exhibit A to Nationwide's Memorandum (Doc. 19-1) is a detailed arrangement describing the implementation and operation of a computer system provided by Nationwide for a monthly fee which the agents were required to use during the early 2000s. That mandatory system was superseded years ago by more flexible arrangements under which the agents can select their own hardware and software systems.

The 2000 version of the computer arrangement that Nationwide attaches contains a statement that the "Nationwide System (hardware, software, manuals, policyholder information and related documentation)" is "proprietary to Nationwide" and states that the agent "agree[s] to protect the Nationwide System (hardware, software, manuals, and related documentation)" from "unauthorized use or disclosure."

On page 5 of its Memorandum (Doc. 19, Pageid#: 102), Nationwide asserts that the inclusion of the term "policyholder information" in the related documentation of the computer system described above means that Mr. Potter has agreed that the "policies themselves" and all of their details belong to Nationwide, an assertion which is repeated in the two bullet points at the top of page 18 of Nationwide's Memorandum (Doc. 19, Pageid#:115). From this, Nationwide concludes that it owns Mr. Potter's book of business, because the policies themselves are "often called the 'book of business.'" (*Id*.) This conflation of Nationwide's policies with Mr. Potter's book of business is both factually incorrect and legally insupportable, as the following discussion illustrates.

### a. Conflating Nationwide's Policies With Mr. Potter's Client Roster

First, it should be reiterated that Nationwide, when discussing its own insurance policies, is not describing Mr. Potter's book of business, which is a "roster of his clients and prospects" along

---

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
29

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 32 of 47   Pageid#: 192

with personal details and pertinent information concerning their insurance needs, *i.e.*, the tool of his trade that will travel with Mr. Potter in the future, whatever his business affiliation might be (Complaint ¶¶ 37-38, Doc. 1, Pageid#: 10), as discussed *supra* in Part II.A. on pp. 17-18. This is factually true regardless of whether Nationwide tries to call its policies a "book of business."

This distinction between Nationwide's policy information and the agent's client information has been drawn by multiple jurisdictions. For example, in 2001 the *Fleming* court, addressing the computer system, stated:

> Most of the agent defendants also entered into Agency Office Automation Lease Agreements. As part of these agreements the agents were provided with automated equipment and supplies including computers, documents, forms and access to a computer network system known as the AOA/AOL system. Monthly payments under these agreements reflected each agent's proportional costs based upon the amount of hardware installed and number of policies in force. See ¶ 4 of the Agency On Line Lease Agreement, Exh. V of Defendant's Appendix (Document No. 126). The lease agreements provided that "any software, manuals, or related documentation, in any form" remained "the property of, and proprietary to, Nationwide ... and [the agent defendants] further agree[d] to protect the software, manuals and related documentation, or any part thereof, from unauthorized disclosure." Each agent defendant was required to maintain a computer password in order to access the computer system. ***The lease agreement did not address the ownership of CLIENT information entered into the system by the respective agents, nor did it contain language prohibiting the use of such information by the agents at any time.***

*Fleming*, p. *12 (citation omitted) (emphasis added).

In 2005, the United States District Court for the Western District of New York addressed the issue whether Mr. Thyroff's client information files, which he had stored on the computer system he leased from Nationwide, belonged to him or to Nationwide. The court issued an order directing Nationwide to return Mr. Thyroff's client information, noting that,

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
30
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 33 of 47   Pageid#: 193

[D]efendant [Nationwide] does not deny that it retained plaintiff's 'personal' information when it rescinded plaintiff's clearance to use the computer system upon the termination of the parties' professional relationship.

and stating that the contract

[W]as not intended to be so broadly interpreted so as to also include plaintiff's purely personal data stored in the computer.

(*Louis E. Thyroff v. Nationwide Mutual Insurance Company, et al.*, Doc. 135, p. 9, W.D.N.Y. Case

No. 00-06481 (Order of July 7, 2005).

In an appellate proceeding which followed, the United States Court of Appeals for the

Second Circuit stated:

Nationwide owns the AOA [the acronym describing Mr. Thyroff's leased computer system] but that does not mean that it also owns any records that Thyroff may have saved on the system. Additionally, Thyroff has alleged that he installed his personal computer programs onto the AOA, and it is clear that Nationwide does not own these programs. Had Nationwide leased Thyroff a filing cabinet into which Thyroff placed his personal property, such as a camera, Nationwide would not contend that it could seize Thyroff's camera when it reclaimed its filing cabinet. The instant situation is no different. This argument could be tenable if Thyroff had agreed to such terms, but *the AOA lease agreement contains no such language transferring the ownership of Thyroff's personal property that he saved on the AOA to Nationwide*.

(*Louis E. Thyroff v. Nationwide Mutual Insurance Company, et al.*, No. 05-4005-CV, 460 F.3d 400,

404-405 (2d Cir. 2006) (emphasis added).

The Court of Appeals of New York, in a separate proceeding in the *Thyroff* case (ruling on

a question of first impression certified from the Second Circuit as to whether the tort of conversion

should be extended to include the theft of electronic data), recognized the separate value that Mr.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
31
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 34 of 47   Pageid#: 194

Thyroff's book of business had to *him* and ruled that Nationwide's taking of his electronic database on his clients was subject to a claim of conversion:

> [I]t generally is not the physical nature of a document that determines its worth, it is the information memorialized in the document that has intrinsic value. A manuscript of a novel has the same value whether it is saved in a computer's memory or printed on paper. **So too, the information that Thyroff allegedly stored on his leased computers in the form of electronic records of customer contacts and related data has value to him regardless of whether the format in which the information was stored was tangible or intangible.** In the absence of a significant difference in the value of the information, the protection of the law should apply equally to both forms-physical and virtual.
>
> In light of these considerations, we believe that the tort of conversion must keep pace with the contemporary realities of widespread computer use. We therefore answer the certified question in the affirmative and hold that the type of data that Nationwide allegedly took possession of-electronic records that were stored on a computer and were indistinguishable from printed documents-is subject to a claim of conversion in New York.

(*Thyroff v. Nationwide*, 8 N.Y.3d, 283, 292, 864 N.E.2d 1272 (2007) (emphasis added).)

### 3. New Language Inserted Into Later Agency Agreements

During the 2000s, Nationwide also began to insert new language into the Agency Agreements themselves, just like the language it inserted into the 2014 proposed modification. These new insertions into various contract forms were not retroactive, so they have no direct effect on the Potter contract, and most decisions issued in the context of these later-altered contracts are not relevant and easily distinguishable.

Some discussion of these later decisions is necessary, however, because Nationwide cites four of them in its Memorandum. These four decisions simply assume the obvious – that the Agency Agreements now say Nationwide owns its insurance policies. Here is a concise summary.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
32
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 35 of 47   Pageid#: 195

*Fox v. Nationwide*, *op. cit.* Nationwide's Memorandum, p. 18. This is another fraudulent inducement case stemming from the same circumstances that produced the *Nemier* case discussed at the beginning of this Opposition Memorandum on pp. 1-3, *supra* ("*Fox* claims [Nationwide] failed to inform her that Nationwide intended to increase premiums for policy holders in the Michigan market, which would cause policy holder defections and decreased future sales opportunities"). (*Fox* at \*\*2-\*\*3.)

Nationwide had induced Ms. Fox to purchase the right to "service" a set of policies and was refusing to make a refund after it devalued the servicing rights with heavy rate increases. Nationwide sharply distinguishes the mere right to service policies from its claim that it owns the policies and, in addressing Ms. Fox's demand for a refund, the court stated, incidentally, that "[t]here is no dispute the written RAE Agreement [the title of Ms. Fox's Agency Agreement] expressly provides that Nationwide retains ownership of the policies . . . ." *Fox* at \*\*52.

*Garbinski v. Nationwide*, *op. cit.* Nationwide's Memorandum, p. 18, Doc. 19, Pageid#: 115. This is a wrongful termination action arising out of a domestic dispute. In the aftermath of the termination, Mr. Garbinski, another victim of an overpriced purchase of "servicing rights" followed by damaging rate increases, demanded various forms of financial relief. In the factual recitation, the court noted that, under Mr. Garbinski's agency agreement, "Nationwide retained ownership of the policies, with Garbinski having servicing rights as to those policies." *Garbinski* at \*9.

*Theiss v. Nationwide*, Exhibit B to Nationwide's Memorandum (Doc. 19-2, Pageid#: 126-148). Mr. Theiss was another victim of an overpriced purchase of servicing rights, who brought claims, *inter alia*, for fraudulent inducement and unjust enrichment. Mr. Theiss had both an RAE

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
33
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 36 of 47   Pageid#: 196

Agreement and a regular Agent's Agreement and, in disposing of those claims, the court took note of a paragraph in each. The RAE agreement contributed the following (at p. 17 of Exhibit B):

> Agent Has No Ownership Interest in Policies, Renewals, or Expirations - Agent agrees and understands that neither the assignment of these policies' servicing rights nor Agent's obligation to reimburse Nationwide for the value of the assignment of these policies grants Agent, either directly or indirectly, explicitly or implicitly, any ownership interest in the policies, renewals, or expirations of the policies assigned, nor to any of the other policies written with Nationwide during Agent's tenure.

Exhibit B to Nationwide's Memorandum at p. 17, Doc. 19-2, Pageid#: 143.) The regular Agent's Agreement contributed this one (*Id*. at p. 18) (emphasis added):

> Service to Customer Upon Cancellation. Consistent with the companies' exclusive use and control of all expirations, it is understood that upon cancellation of this Agreement, the Companies shall retain the ***exclusive*** right to continue to provide insurance services to any and all customers and to continue to solicit such customers for additional business.

*Id*. at p. 18, Doc. 19-2, Pageid#: 144 (emphasis added).

This Paragraph 11 is analogous to Paragraph 10 in Mr. Potter's Corporate Agency Agreement, *except* for the addition of the new word "***exclusive***." This is one of the alterations Nationwide made in the 2000s, to help Nationwide in its attempts to put the agents out of business and eliminate competition after termination. Without the word "exclusive," the same paragraph in Mr. Potter's contract simply allows Nationwide to keep its policies in force and compete with Mr. Potter after termination.

***Bye v. Nationwide****, op. cit*. Nationwide's Memorandum, p. 18 (Doc. 19, Pageid#: 115.) *Bye* is a wrongful termination case, arising from Mr. Bye's apparent breach of the exclusivity clause in his contracts. Mr. Bye, himself, claimed that Nationwide owned his book of business and used that

_____
**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
34
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 37 of 47   Pageid#: 197

ownership claim as the basis of his complaint that Nationwide made a profit by "churning" agents, taking a failed agent's business and selling it to a new agent for a higher fee, leaving the "churned" agent in the dust. (*Bye* at *21.) This was the source of the statement that Nationwide attributes to the *Bye* court on page 18 of its Memorandum. As the court put it, "[p]laintiff conceded, and indeed objected to, the fact that Nationwide 'owned his book of business.'" (*Id.* at *20.)[5]

These four decisions do not address the issue in this litigation. There is, however, one decision based on the altered contracts that Nationwide has missed – a ruling which *does* address the issue presented in this case. In 2016, the Court of Common Pleas in Franklin County, Ohio denied Nationwide's motion to dismiss an unjust enrichment claim based on alleged confiscation by Nationwide of a terminated agent's book of business, with this comment:

> To the extent Count Three is based on Nationwide's retention of Forbes' client lists, Nationwide directs the Court's attention to Paragraph Seven of the [Agency] Agreement which states in pertinent part:
>
> > It is agreed and understood that you will have access to Nationwide proprietary information, confidential information, and/or trade secrets (collectively, "Confidential Information") in the course of your representation of the Companies as an agent. * * * [Y]ou acknowledge your understanding that Nationwide marketing plans, insurance rate schedule, *customer lists*, policy expiration dates, underwriting guidelines and other similar information, and all copies thereof, are types of Confidential Information * * *. You further agree that you not utilize any Confidential Information for any purpose other than Nationwide's benefit, during or after the termination of the Agreement. Upon termination of this Agreement, you agree to return all Confidential

---

[5]In summarizing the claim, the court placed the term "books of business" in quotation marks (at p. *20), but the decision did not explain or define what a "book of business" might be.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
35
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 38 of 47   Pageid#: 198

> Information, and all copies thereof, to the Companies immediately.
>
> (Emphasis added.)
>
> In reviewing the above along with Article 9(B) of the AE Agreement and Paragraph 11 of the [Agency] Agreement, at this time the Court is unable to find that the contracts, by themselves, conclusively demonstrate Nationwide had the right to retain Forbes' "book of business." **While there is little doubt that Nationwide had the right to retain its policyholder's information and customer lists under the AE and [Agency] Agreements, there is nothing within the contracts that specifically addresses a "book of business" or customer list separately maintained by Forbes.**

Decision And Entry On Defendant's Partial Motion To Dismiss Plaintiff's Second Amended Complaint at pp. 7-8, *Ruth Forbes v. Nationwide Mutual Ins. Co.*, Case No. 14-CV-4944, Court of Common Pleas, Franklin County, Ohio (April 27, 2017) (attached as **Exhibit A**).

> **D.**      **The *Kohler* and *Costanzo* Decisions Do Not Alter The Conclusions That Emerge From The Predominant Line Of Cases Construing The Potter Form Of Contract**

*Kohler v. Nationwide*, *op. cit.* Nationwide's Memorandum, p. 17, Doc. 19, Pageid#114, is a termination case in which the terminated agents claimed, *inter alia*, that Nationwide had converted their "books of business" by unilaterally terminating their Agent Agreements. On appeal the Ninth Circuit affirmed summary judgment in favor of Nationwide on the theory that the agents had not satisfied the initial element of a conversion claim – exclusive ownership of the converted asset (at p. *5).

Nationwide states that the *Kohler* court was "interpreting near-identical language" in the Agency Agreement (Nationwide Memorandum, p. 17, Doc. 19, Pageid#:114), but it is clear from the preceding discussion in this Memorandum that if the court had been interpreting the actual Potter contract in its factual setting, the decision would have been the opposite.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
36
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 39 of 47   Pageid#: 199

Recognizing that "the Agent's Agreement does not specifically indicate who owns the book of business," the *Kohler* court found that "it contains several provisions that undermine Plaintiff's ownership claims" (at pp. *5-*6), which it described as follows:

> First, the Agreement states, "Upon cancellation of this Agreement, it is understood that the companies retain the right to continue to provide insurance services to all of the customers and to continue to solicit such customers for additional business." Second, the Agent's Agreement allows Nationwide to deny benefits to plaintiffs who induce a Nationwide customer to cancel its policies or solicits those customers on behalf of another insurance company. Finally, the Agreement contains a one-year noncompetition agreement that would render Plaintiffs' ownership of the book of business essentially useless. As the district court determined, these provisions are fatally inconsistent with Plaintiffs' claimed right to continue selling insurance to Nationwide policyholders.

(*Kohler v. Nationwide Mut. Ins. Co.*, United States Court of Appeals for the Ninth Circuit (June 22, 1998) No. 97-15807, 1998 U.S. App. LEXIS 13619, *7). These three provisions do not operate the same way in Mr. Potter's agreement.

<u>First</u>, Paragraph 10 of Mr. Potter's agreement is the same as the provision quoted in the *Kohler* decision, but Paragraph 10 *does not preclude post-termination competition by the agent*. As the *Fleming* court put it, looking at the exact same provision, Nationwide's right to "continue to provide insurance services to any and all customers" and to "continue to solicit such customers for additional business" could not

> [B]e read or understood as prohibiting the [agents] from copying and disseminating such information to others in an effort to induce the policyholders to purchase insurance from carriers that compete with plaintiffs.[fn]
>
> _____
>
> [fn][The agents] forcefully argue that [Nationwide has] been on notice since 1988 that such was the case. In *Stenger*, the court interpreted the agent's agreement in question and concluded it failed to provide the right of proprietary ownership which [Nationwide]

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
37
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 40 of 47   Pageid#: 200

> now somehow seek[s] to create despite the lack of textual support for
> that right. See Stenger, 695 F.Supp. At 693 (preliminarily deciding
> agent's agreement and related company documents failed to give
> [Nationwide] proprietary ownership over the information contained
> in policyholder files serviced by exclusive agents and reasoning that
> the liquidated damages clause provides adequate remedy at law for
> the agent's retention and competitive use of that information).

*Fleming*, No. 99-1417, 2001 U.S. Dist. LEXIS 26739, *40.[6]

Second, because Nationwide is going to unilaterally cancel Mr. Potter's contract on July 1,

2020, as part of a mass at-will termination program, the "forfeiture for competition" provision in his

Corporate Agency Agreement (Complaint, Exhibit A, ¶ 12(f), Pageid#: 31) will not be enforceable,

as explained on pp. 15-17, *supra*, discussing Mr. Potter's "justified expectation" that his retirement

benefits will be paid upon termination.

Third, there is no "one-year noncompetition agreement" remaining in the Potter Corporate

Agency Agreement. As explained in note 3 on p. 21, *supra*, the Agency Agreement specifies that the

restrictive covenant expired May 1, 1994. (Complaint, Exhibit A, Corporate Agency Agreement ¶

11, Doc. 1-2, Pageid# 26.)

***Costanzo v. Nationwide***, *op. cit.* Nationwide's Memorandum at pp. 16, 17, 18 (Doc. 19,

Pageid##: 113, 114, 115), was an action brought by Nationwide exclusive agents in response to the

computer agreement that is Exhibit A to Nationwide's Memorandum, seeking a declaration that the

computer agreement did not convey ownership of the policies to Nationwide. The trial court, citing

*Nationwide Mut. Ins. Co. v. Fleming* (discussed *supra* at pp. 19-22), found that the agency

---

[6]Nationwide knows this, which is why it began to insert the word "exclusive" into its new
contracts during the 2000s, as explained on pp. 33-34, *supra*, discussing the *Theiss* decision.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
38

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 41 of 47   Pageid#: 201

agreements did not give Nationwide any property interest in the policies, but that the later computer agreement did.

The appellate court did not disturb the trial court's finding with respect to the agency agreements but split 2-1 on the computer agreement. The majority, relying on statements in the computer agreement such as "the Nationwide System (hardware, software, manuals, policyholder information and related documentation)" is "proprietary to Nationwide," sided with the trial court. (*Costanzo*, ¶ 23 at p. 12.) The third member of the panel disagreed, on the basis of this analysis (emphasis is the Court's):

> {¶35} [If] Nationwide had not already owned the information, it did not receive it as a result of the Computer Agreement. This contract did not transfer anything—it was exclusively concerned with the installation and operation of the computer system.
>
> {¶ 37} Hidden away in Section 9, entitled "Protection and Security" was this: "You also agree that the Nationwide System (hardware, software, manuals, **policyholder information and related documentation**) are [sic–should be is]] the property of and proprietary to, Nationwide or Nationwide's third party vendors, and further agree to protect the Nationwide System (hardware, software, manuals, and related documentation) or any part thereof, from unauthorized use or disclosure. * * *" (Emphasis added.) There were no words of conveyance, and construing the language against the drafter, I would hold that the language meant, at most, that the electronic data stored in the system was Nationwide's property. That would have no bearing at all on the ownership of the underlying information–or on the agent's right to use it.

The minority analysis of the Computer Agreement is consistent with the predominant line of decisions construing the Potter contract form and the computer agreements (see the discussions

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
39
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 42 of 47   Pageid#: 202

in Parts II.B. and II.C.2., *supra*) but, more fundamentally, the *Costanzo* decision **does not address the issue in this case**: whether Nationwide owns Mr. Potter's book of business.[7]

## III.   NATIONWIDE'S ARGUMENT THAT MR. POTTER IS NOT ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF IS WITHOUT MERIT

Nationwide says declaratory and injunctive relief are the wrong remedies for Mr. Potter's claims. "[D]eclaratory relief serves no purpose," according to Nationwide, because "the declarations would not help guide **future** conduct." (Nationwide Memorandum 15 (emphasis in original).) As for Mr. Potter's request for an injunction, Nationwide says "equitable relief is inappropriate where damages are recoverable and adequate." (*Id*.) Nationwide's criticism of Mr. Potter's chosen relief is misguided.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation." *Hipage Co. v. Access2Go, Inc*., 589 F. Supp. 2d 602, 615 (E.D. Va. 2008) *(citing Volvo Constr. Equip. N. Am., Inc. v. CLM Equip.* Co., 386 F.3d 581, 593-94 (4th Cir. 2004)); *Sprint Communs. Co., L.P. v. Fairpoint Communs., Inc.*, No. 3:16-CV-00820-GCM, 2017 U.S. Dist. LEXIS 104775,

---

[7]In *dicta*, the appellate court advanced a new "common law" theory that Nationwide owned its policies under § 395 of the Restatement of Agency 2d (1958), but that idea conflicts directly with its statement that "an insurance company and its agents have the authority to supplant by contract the common law rules governing their relationship," (Nationwide's Memorandum, p. 17, Doc. 19, Pageid#: 114), which is exactly what the Nationwide parties have done with their Agency Agreements. With respect to common law theories, it should also be noted that § 396, which states that the agents have a common law right to compete after termination, using any information that was not given to them in confidence by the principal or acquired in violation of duty, allows the agents to compete after termination using their books of business.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
40
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 43 of 47   Pageid#: 203

at *18 (W.D.N.C. July 7, 2017). It is well-established that a district court's exercise of its discretionary authority to issue a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (omission in original) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Mr. Potter's claims align perfectly with the prerequisites for obtaining relief pursuant to the Declaratory Judgment Act. Nationwide's cessation of the DCIC program is a continuing breach of the Agency Agreement, leading to eventual injury. At the end of each calendar year, a specified percentage of DCIC, which is defined as Mr. Potter's "annual original and service fee earnings," is supposed to be credited to Mr. Potter's account. (Complaint, Exhibit A, Corporate Agency Agreement ¶ 12(a), Doc. 1-2, Pageid#: 27.) DCIC accrues at the end of each calendar year, but it is not available until retirement or termination. (*Id*.) DCIC accrues at the end of each calendar year, but it is not available until retirement or termination. (*Id*.) In 2016, Nationwide announced it would terminate DCIC effective December 31, 2016. (Complaint ¶¶ 30-31, Doc. 1, Pageid##: 7-8.) December 31, 2017, the first year Nationwide refused to credit DCIC, is the date of the initial breach (failure to credit Mr. Potter) but another breach is upcoming on December 31, 2018, which will be the second year Nationwide refuses to credit DCIC. This recurring breach is appropriate for declaratory relief to articulate Mr. Potter's rights under the contract and prevent further failure to accrue and eventual damage to Mr. Potter when Nationwide terminates his contract on July 1, 2020.

Nationwide's contention that its anticipatory repudiation of its obligation to pay Extended Earnings is inappropriate for declaratory relief fares even worse. Nothing about the Extended

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
41
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 44 of 47   Pageid#: 204

Earnings phase-out has occurred yet except Nationwide's announcement of an anticipatory breach. (Complaint ¶¶ 32-36, Doc. 1, Pageid##: 8-9.) The unlawful phase out of Extended Earnings begins in July 2019. (*Id.*) This future breach, which Nationwide has made clear it intends to carry out, is particularly appropriate for declaratory relief, given Nationwide's purpose in phasing out extended earnings – to drive Mr. Potter into the "options" Nationwide has presented, which require him to "buy" his own book of business in order to continue to pursue his profession after the July 1, 2020 termination. *See* 28 U.S.C. § 2201(a).

The cases on which Nationwide relies in fact are supportive of Mr. Potter's point that an ongoing or future breach of contract is well within the purview of the Declaratory Judgment Act. Each of those cases dealt with an already-existing breach of contract claim, where the injury had occurred and there was no ongoing controversy. *Metra Indus. v. Rivanna Water & Sewer Auth.*, 2014 U.S. Dist. LEXIS 21568, at *6 -*7 (W.D. Va. Feb. 19, 2014) (finding declaratory relief duplicative of the litigation of other causes of action); *Jones v. Jones*, 206 F. Supp. 3d 1098 (E.D. Va. 2016) ("[T]he parties' dispute does not present an ongoing controversy" and "Plaintiff concedes that declaratory judgment is not necessary for the resolution of Plaintiff's claims"); *Tapia v. United States Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010) ("[A]ny wrong Plaintiff's suffered as a result of the allegedly deficient foreclosure has already occurred.").

Equally flawed is Nationwide's argument that Mr. Potter is not entitled to injunctive relief. "Here, injunctive relief is inappropriate because Plaintiff seeks monetary benefits," Nationwide posits. (Nationwide's Memorandum at p. 16, Doc. 19, Pageid#: 113.) "Whether to grant injunctive relief is within the sound discretion of the district court." *See Hughes Network Sys. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994). Mr. Potter asks the Court to enjoin Nationwide

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
42

Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 45 of 47   Pageid#: 205

from proceeding down its announced course of phasing out Extended Earnings one year prior to a unilateral termination of the contract, which would constitute an anticipatory repudiation of the Agency Agreement. Mr. Potter likewise asks the Court to enjoin Nationwide from continuing to deny him credit for DCIC prior to the date of its termination of the Agency Agreement. He cannot recover monetary damages for either of these ongoing breaches at this point, because the financial injury will not occur until after the July 1, 2020 termination. Thus, Mr. Potter does not have a cause of action for breach of contract, because he is missing the final element – injury.

In short, Mr. Potter seeks the appropriate remedies for the claims he raises. Declaratory relief is appropriate – indeed, it is highly efficient – because Nationwide is engaged in an ongoing breach by denying Mr. Potter DCIC credits and has announced a future breach in the phase out of Extended Earnings. For similar reasons, injunctive relief is an appropriate remedy to address the ongoing and anticipated future breaches to avoid later pecuniary damage.

## CONCLUSION

For the reasons stated, Nationwide's Motion to Dismiss Plaintiffs' Complaint should be denied.

DATED:        September 19, 2018

                                        Respectfully submitted,

                                        **GLENN, FELDMANN, DARBY & GOODLATTE**

                                        */s/ Paul G. Beers*

                                        _____
                                        **PAUL G. BEERS** (VSB #26725)
                                        **ROBERT A. ZIOGAS** (VSB #24964)
                                        **EMMA MADDUX KOZLOWSKI** (VSB #85957)
                                        37 Campbell Avenue, S.W.
                                        Roanoke, VA 24011-2887

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
43
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 46 of 47   Pageid#: 206

| T: | 540-224-8000 |
|---|---|
| F: | 540-224-8050 |
| E: | pbeers@glennfeldmann.com; |
| | rziogas@glennfeldmann.com; |
| | ekozlowski@glennfeldmann.com |

**WILLIAM P. TEDARDS, JR.**
DC Bar No. 143636, Admitted *PHV*
1101 30th Street, NW, Suite 500
Washington, DC 20007

| T: | 202-797-9135 |
|---|---|
| F: | 202-797-9139 |
| E: | BT@tedards.net |

Counsel for Plaintiffs Potter Insurance Agency, Inc.
and Patrick A. Potter

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2018, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, thereby serving all counsel of record.

*/s/ William P. Tedards, Jr.*

**WILLIAM P. TEDARDS, JR.**
(DC 143636, Admitted *PHV*)

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
*Potter Ins. Agency, Inc., et al. v. Nationwide Mutual Insurance Company*, Case No. 2:18-cv-00021-JPJ-PMS
44
Case 2:18-cv-00021-JPJ-PMS   Document 24   Filed 09/19/18   Page 47 of 47   Pageid#: 207